# Exhibit H

Cyrus D. Mehta, Esq.
Cyrus D. Mehta & Partners PLLC
One Battery Park Plaza, 9th Floor
New York, NY  10004


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT

|  |  |  |
|---|---|---|
| _____ | ) | Disciplinary Case No. D2021-0007 |
| In the Matter of: | ) | Adjudicating Official: Hon. Steven Morley |
|  | ) | Next Hearing Date: TBD |
|  | ) |  |
| Rebecca A. Moriello, | ) |  |
| Respondent | ) |  |
| _____ | ) |  |


## RESPONDENT'S EVIDENTIARY EXHIBITS

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 2 of 60

Cyrus D. Mehta, Esq.
Cyrus D. Mehta & Partners PLLC
One Battery Park Plaza, 9th Floor
New York, NY 10004

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT

|  |  |  |
|---|---|---|
| In the Matter of: | ) | **Disciplinary Case No. D2021-0007** |
|  | ) | **Adjudicating Official: Hon. Steven Morley** |
|  | ) | **Next Hearing Date: TBD** |
|  | ) |  |
| Rebecca A. Moriello, | ) |  |
| **Respondent** | ) |  |
|  | ) |  |

## RESPONDENT'S EVIDENTIARY EXHIBITS

Enclosed are the Respondent's evidentiary exhibits with a table of contents.

Although the Scheduling Order states that "Respondent shall file its brief and any further evidence on or before February 18, 2022," based on the discussion at the pre-hearing telephonic conference on November 23, 2021, Respondent is submitting evidentiary exhibits by December 17, 2021 so that EOIR/DHS may address them in their pre-hearing brief to be filed on or before January 18, 2021.

Respondent reserves the right to submit additional evidence by February 18, 2021 and after EOIR/DHS file their prehearing brief. EOIR/DHS may thereafter respond to this additional evidence.

Respectfully submitted,

Dated December 17, 2021

Cyrus D. Mehta

2

# **TABLE OF CONTENTS**

**TAB**                                                                                     **PAGES**

**A**    Psychological Evaluation of Respondent by Dr. Lisa Fox, Psy.D., dated March 4 and
         March 11, 2021.................................................................................5

**B**    Psychological Assessment of Respondent by Casey Baine, LCMHC, LCAS, NCC, dated
         December 5, 2021...........................................................................................16

**C**    Respondent's post on the American Immigration Lawyers' Association "Think
         Immigration" Blog discussing her autism diagnosis........................................24

**D**    Letter in support of Respondent by former Immigration Judge Susan Roy, dated
         December 16, 2021.............................................................................29

**E**    Letter in support of Respondent by former Board of Immigration Appeals member Lory
         Rosenberg, dated December 15, 2021.........................................................44

**F**    Letter in support of Respondent from the National Immigration Project of the National
         Lawyers Guild, dated December 17, 2021.................................................47

**G**    Letter from Fayetteville Justice for Our Neighbors confirming Respondent's pro bono
         assistance to FJFON, dated December 15, 2021..........................................51

**H**    Letter from InStepp, Inc. confirming that it has received pro bono technical immigration
         law support from Respondent, dated December 16, 2021................................53

**I**    Letter from National Association of Latino Elected & Appointed Officials (NALEO)
         confirming Respondent's pro bono participation in naturalization assistance events, dated
         September 24, 2018..........................................................................56

**J**    Letter from Rafael Lopez, CEO of Central Comunitaria.Org, confirming Respondent's
         pro bono assistance to Central Comunitaria.Org and Catholic Charities of Raleigh, dated
         December 16, 2021............................................................................58

# Tab A

# PSYCHOLOGICAL EVALUATION

## THE NEUROPSYCHOLOGY CONSULTANTS, P.A.

Neuropsychological Evaluation, Rehabilitation Neuropsychology,
Neurobehavioral Management, Clinical Psychology
3509 Haworth Drive, Suite 404, Raleigh, NC 27609

E.J. Burgess, Psy.D.
Lisa Fox, Psy.D.
Michelle, Stack, Ph.D.
Mary Crumpler, MA, LPC

Raleigh

Office: 919-785-9944
FAX:   919-785-9992

Laura Haggett, Office Manager

Billing   FAX:   919-785-9992

| Name: | Beckie Moriello | Date of Birth: | 05/16/1979 |
|---|---|---|---|
| Age: | 41 | Education: | 18 Years |
| Evaluation Date: | 03/04 & 03/11/2021 | Report Date: | 03/29/2021 |
| Referral Source: | Self | Evaluator: | Lisa Fox, Psy.D. |

**REASON FOR REFERRAL:** Beckie Moriello is a 41-year-old right-handed Caucasian non-binary individual who was self-referred for a psychological evaluation due to concerns that they might have autism. The purpose of the evaluation was to assess current level of psychological functioning and to inform treatment planning and recommendations.

**PROCEDURES:** Clinical interview with Mx. Moriello on 03/04/2021 and psychological testing on 03/11/2021. Mx. Moriello was informed of the nature and the purpose of the evaluation, as well as the intended use of the results, and consented to participate. No collateral information regarding childhood functioning was able to be obtained and no records were available for review. For tests administered, please see the appendix.

## RELEVANT HISTORY

**Presenting Problem:** Mx. Moriello reported a history of social discomfort and decreased socio-emotional understanding since childhood and indicated that others have suggested that they may have mild autism. Although they can initiate social interaction, they find it "awkward" and stated that others have always interpreted their communication style/behavior as rude. They reported never having many friends and being bullied as a child/teen. Their current peer group mainly consists of others in their profession. While they generally have positive relationships with others, they feel that their friends can "dogpile" on them at times, and they indicated having no difficulty cutting people out of their life if they upset them. They stated that they at times laugh inappropriately, have decreased awareness of how others' view them, have difficulty following television shows with complex relationships, tend to overshare, often are the last to get a joke, and do not always understand when they have hurt someone's feelings. They reported a disconnect between their self-perception of their social interactions and how others view them (e.g., they feel capable of empathy, but others tell them they are unsympathetic, or asking questions to more fully understand something and others finding them argumentative).

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 6 of 60

Mx. Moriello reported a strong interest in language and feels they can be rigid in their understanding of language and will go out of their way to explain their view to others. Although they preferred to follow a set schedule as a child, they were able to tolerate changes if they occurred. There is still a preference for routine but ability to adapt to changes. They reported mild tics such as blowing out their cheeks, raising a corner of their lip or slowly closing one eye and stated that they often sit in strange positions. They reported that as a child they covered their walls and ceiling with posters because they thought it was important that the space be covered and not due to any aesthetic reason. Regarding sensory difficulty, Mx. Moriello stated that they were sensitive to tags in clothing as a child and prefers comfortable clothing now. They indicated that some noises cause intense reactions, they dislike the feel of fans or air conditioning blowing on them, strongly dislike the feel of toothpaste in their mouth, and do not like the feel of running their hands over clothing.

Although they denied notable problems with attention/concentration or learning difficulty, Mx. Moriello feels that they have difficulty with organization and problems synthesizing large amounts of information. They also reported other cognitive concerns of poor sense of direction and difficulty recalling people's names/faces.

**Psychiatric History:** Mx. Moriello participated in therapy twice in childhood, which they feel was likely due to their communication issues. They more recently have used betterhelp.com since determining they are non-binary. Regarding current emotional functioning, they reported that others can interpret their mood as angry due to their tendency to be emotionally expressive when upset. They noted a period of intense anxiety in 2010 due to psychosocial stressors and were prescribed an antidepressant at that time, which they later discontinued. They denied depressive symptoms but stated that they at times can get "a horrible feeling that is intense and brief" that usually occurs when they are rejected by others. At these times they have experienced thoughts of suicide but denied developing a plan or actual suicide attempts.

**Medical History:** Mx. Moriello's medical history is significant for appendicitis, appendectomy, and jaw surgery. They take no prescribed medications other than birth control. Vision and hearing are good. Sleep and appetite are generally adequate. There is no family history of autism or other neurodevelopmental disorders. Regarding substance use, Mx. Moriello reported rare alcohol use but reported a period of heavier drinking in their twenties and thirties. They reported a remote history of limited recreational use of drugs such as marijuana, mushrooms and ecstasy but denied current use.

**Social History:** Mx. Moriello was born and raised by both parents in Chicago, Illinois and has one brother. There is no history of developmental delay, learning problems or trauma history. They currently reside in Durham, N.C. with their partner of 3.5 years. Legal history is notable for 2 misdemeanors for using their phone in court; these are currently on appeal.

Case 1:22-cv-00969    Document 4-8    Filed 11/10/22    Page 7 of 60

**Educational/Occupational History**: Mx. Moriello obtained a bachelor's degree in linguistics from Pitzer College, a MA in sociolinguistics from North Carolina State University and completed their JD at University of North Carolina at Chapel Hill. Although they had no formal learning problems, they reported longstanding difficulty with research papers due to problems synthesizing information into a cohesive narrative. This difficulty caused them struggle in law school, as many assignments required this skill. Mx. Moriello currently works as an immigration attorney.

**BEHAVIORAL OBSERVATIONS:** Mx. Moriello was seen for the initial appointment via telehealth. They arrived at second in-person appointment on time and unaccompanied. They were fully alert and oriented throughout the testing and maintained an adequate working rapport. They were appropriately groomed and dressed appeared their stated age. Relatedness and eye contact were appropriate. They were cooperative with the evaluation and appeared to be a reliable informant. Recent and remote memory appeared intact. Expressive language was spontaneous, fluent, and intelligible and receptive language appeared intact. They ambulated independently, and no fine motor difficulty was observed. Mood appeared mildly anxious, and affect was congruent. Their thought process appeared coherent and goal directed. Perceptual disturbances and suicidal/homicidal ideation were denied. Test behavior was unremarkable. Validity indices on the PAI indicated some defensiveness but no feigning. Thus, results are generally considered to be a valid reflection of their cognitive and psychological functioning at the present time.

**EVALUATION RESULTS:** Test results are described in range of performance as outlined below.

| Standard Score | Scaled Score | Classification | Standard Score | Scaled Score | Classification |
|---|---|---|---|---|---|
| >130 | >17 | Extremely High | 80-89 | 6-9 | Low Average |
| 121-129 | 15-16 | High | 70-79 | 4-5 | Low |
| 111-120 | 13-14 | High Average | <70 | <3 | Extremely Low |
| 90-109 | 8-12 | Average | | | |

**Intelligence:** Performance on a measure of adult intellectual ability (WAIS-IV) indicated high average range overall intellectual functioning (FSIQ=113). Their verbal and nonverbal reasoning abilities are in the high average range, as assessed by the Verbal Comprehension and Perceptual Reasoning Indices (VCI=116; PRI=111). While their verbal comprehension abilities were consistent across the subtests that comprise this domain, their perceptual reasoning skills were significantly discrepant. More specifically, they performed in the high average range on tasks of visual spatial construction and pattern recognition, and in the average range on a task of ability to solve mental puzzles. Performance on the Processing Speed Index was also high average (PSI=120) but again notable for discrepancy between their high range speeded code transcription and average range timed visual spatial discrimination. Their ability to sustain

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 8 of 60

attention, concentrate, and exert mental control was in the average range (WMI=95), compared to their peers, but was a weakness relative to their nonverbal and verbal reasoning abilities.

**Emotional/Behavioral Functioning**: On the SRS-2, Mx. Moriello's profile did not indicate significant deficiencies in reciprocal social behavior. Their total score on this measure was within normal limits (T=53). Their scores on the social communication and interaction and repetitive behaviors subscales were also within normal limits. In contrast, Mx. Moriello's partner's responses on the SRS indicated clinical level of concern regarding their social-emotional functioning (T=66). Their partner's responses also indicated clinically significant concern on the social communication and interaction subscale.

On the RAADS-R, a measure of characteristic symptoms of autism, Mx. Moriello's overall score was above the threshold value for suspected Autism Spectrum Disorder (ASD) but below scores of males and females with suspected and diagnosed ASD. Responses in all domains (e.g., language, social relatedness, sensory/motor, and circumscribed interests) were above the threshold for suspected ASD.

Screening measures for autism were positive. More specifically, Mx. Moriello's responses on the ASSERT indicated a total score of 8 and a positive screen. The Adult Asperger's Assessment (AAA) was used to further assess Mx. Moriello's current and past social emotional and behavioral functioning. Their score on the Autism Quotient (AQ) was a 17/50 and less than the average score for individuals with ASD. In contrast, their score on the Emotional Quotient (EQ) was a 25/80 and consistent with the average score of those with ASD. They met the AAA's class clinic diagnostic criteria in all domains (social, obsessions, communication, and imagination).

No anxiety and depression were indicated on self-report measures (GAD-7; BDI-II). On a measure of social anxiety (SAQ-A), Mx. Moriello did not indicate difficulty with nervousness when socializing, with scores in all domains below the threshold for significance.

Mx. Moriello was administered the PAI to assess mood and personality functioning more fully, and they did not appear to present themself as more impaired than the clinical picture would warrant. There were some inconsistencies in their responses when comparing questions asked at the beginning to those asked at the end of the test. As such, it is possible that their approach to the test changed over time (e.g., they might have become less attentive toward the end). Additionally, Mx. Moriello's pattern of responses suggests that they tend to portray themself as being relatively free of common shortcomings to which most individuals will admit, and they appeared somewhat reluctant to recognize minor faults in themself. Although there is no evidence to suggest an effort to intentionally distort the profile, the results may underrepresent the extent and degree of any significant findings in certain areas due to their tendency to avoid negative or unpleasant aspects of themself.

Overall, The PAI clinical profile reveals no elevations that should be considered to indicate the presence of clinical psychopathology. Additionally, use of the ASD Differential Function

Calculator for the PAI did not identify clinically significant ASD like symptomatology However, these results may not fully capture the true clinical picture due to the aforementioned defensiveness.

**IMPRESSION/RECOMMENDATIONS: Autism Spectrum Disorder, Mild, Provisional**
Beckie Moriello is a 41-year-old non-binary individual with a history of social-emotional weaknesses who presented for assessment due to concerns regarding autism. Cognitive assessment indicated average to high average intellectual ability with relative weakness in working memory. Responses on self-report measures of mood, personality and behavior were variable (likely due to tendency to minimize some areas of difficulty) but indicate clear deficits in social relatedness and communication and mild weakness in imagination and repetitive behaviors/interest. Mx. Moriello has had difficulty initiating relationships throughout her life but has been able to adapt to the social world likely due to strategic imitation and social camouflaging, an extroverted nature and strong adaptive functioning. However, she struggles with social-emotional reciprocity and understanding social situations and others' thoughts and feelings. Communication impairments include difficulty initiating conversation/superficial social contact, difficulty recognizing lack of interest in others and tendency to speak frankly without considering the impact of the comment on others' feelings. Mx. Moriello presents with more subtle difficulty in repetitive and stereotyped patterns of behavior and interests (e.g., preference for sameness, sensory sensitivity, and rigid thinking), with these symptoms less impactful on daily functioning.

There do not appear to be other psychological or personality factors that might explain the above noted constellation of symptoms and Mx. Moriello's presentation is most consistent with high functioning autism. Mx. Moriello's current partner corroborated their social emotional difficulty but no collateral information regarding early childhood functioning was able to be obtained. Thus, a provisional diagnosis of autism is made at this time.

**RECOMMENDATIONS:**
1.      Mx. Moriello may wish to engage in therapy focused on learning to better detect and interpret social cues.
2.      Review of materials related to Adult Autism:
   * *Living Well on the Spectrum* by Valerie Gaus,
   * *Asperger's and Adulthood* by Blythe Grossberg,
   * *22 Things a Woman with Asperger's Syndrome Wants Her Partner to Know* by Rudy Simone
   * *The Unwritten Rules of Social Relationships* by Temple Grandin and Sean Barron.
3.      Repeat psychological assessment as needed.

It was a pleasure working with Mx. Moriello.

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 10 of 60

Respectfully,

Lisa Fox, Psy.D.
The Neuropsychology Consultants, PA
NC License # 4904

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 11 of 60

# PSYCHOLOGICAL EVALUATION

## APPENDIX

**Wechsler Adult Intelligence Scale– Fourth Edition (WAIS-IV)**

| Index | Standard Score | Classification |
|---|---|---|
| Verbal Comprehension ** | 116 | High Average |
| Perceptual Reasoning** | 111 | High Average |
| Working Memory | 95 | Average |
| Processing Speed | 120 | High Average |
| Full Scale IQ ** | 113 | High Average |
| Subtest | Scaled Score | Classification |
| Similarities | 12 | High Average |
| Vocabulary | 13 | High Average |
| Information | 14 | High Average |
| Block Design | 13 | High Average |
| Matrix Reasoning | 14 | High Average |
| Visual Puzzles | 9 | Average |
| Digit Span | 9 | Average |
| Arithmetic | 9 | Average |
| Symbol Search | 11 | Average |
| Coding | 16 | High |

** Prorated Score

**Social Responsiveness Scale- Second Edition (SRS-2)**

| Scale | Self T-Score | Range | Informant T-Score | Range |
|---|---|---|---|---|
| Total Score | 53 | Average | 66 | Clinical |
| Social Communication and Interaction | 53 | Average | 69 | Clinical |
| Restricted Interests and Repetitive Behavior | 53 | Average | 53 | Average |

**Ritvo Autism-Asperger's Diagnostic Scale – Revised (RAADS-R)**

| Scale | Score |
|---|---|
| Total Score * | 103 |
| Language* | 6 |
| Social Relatedness* | 55 |
| Sensory/Motor* | 22 |
| Circumscribed Interests* | 20 |

*Above the threshold for suspected ASD

**Autism Symptom Self-Report (ASSERT)**

| Total Score | 8 | Positive Screen |
|---|---|---|

| Measure | Raw Score | Classification |
|---|---|---|
| Beck Anxiety Inventory | 0 | No Anxiety |
| Beck Depression Inventory – II | 1 | No Depression |

**Social Anxiety Questionnaire for Adults (SAQ-A30)**

| Domain | Score |
|---|---|
| Total Score | 66 |
| Speaking in Public/Talking with People in Authority | 10 |

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 12 of 60

| Interactions with the Opposite Sex | 18 |
|---|---|
| Assertive Expressions of Annoyance, Disgust, or Displeasure | 13 |
| Criticism and Embarrassment | 15 |
| Interactions with Strangers | 10 |

**Personality Assessment Inventory (PAI)**

| Scale | T-Score | Scale | T-Score |
|---|---|---|---|
| ICN | 52 | INF | 40 |
| NIM | 47 | PIM | 59 |
| SOM | 51 | ANX | 42 |
| ARD | 44 | DEP | 40 |
| MAN | 54 | PAR | 56 |
| SCZ | 49 | BOR | 52 |
| ANT | 47 | ALC | 47 |
| DRG | 46 | | |

**TESTS ADMINISTERED:** Adult Asperger Assessment (AAA); Autism Symptom Self-Report (ASSERT); Beck Depression Inventory – 2nd Edition (BDI-II); Generalized Anxiety Disorder – 7 Item Scale (GAD-7); Personality Assessment Inventory – 2nd Edition (MMPI-2); Ritvo Autism-Asperger's Diagnostic Scale – Revised (RAADS-R); Social Anxiety Questionnaire (SAQ); Naming); Social Responsiveness Scale- Second Edition (SRS-2); Wechsler Adult Intelligence Scale-4th Edition (WAIS-IV).

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 13 of 60

## Contact

www.linkedin.com/in/lisa-
fox-0766ab7 (LinkedIn)

## Top Skills

Psychotherapy

Mental Health

CBT

# Lisa Fox

Clinical Neuropsychologist

Cary

## Experience

**The Neuropsychology Consultants**
Clinical Neuropsychologist
June 2016 - Present (5 years 7 months)
Raleigh-Durham, North Carolina Area

**Keiser University**
Graduate Psychology Faculty
May 2013 - April 2016 (3 years)

**Yeshiva University**
Adjunct Professor
September 2009 - May 2015 (5 years 9 months)

**NYU Langone Medical Center**
4 years 4 months

Psychologist
August 2011 - December 2013 (2 years 5 months)

Postdoctoral Fellow
September 2009 - August 2011 (2 years)

**Rusk Institute for Rehabilitation Medicine NYU Langone Medical
Center**
Psychology Intern
September 2008 - August 2009 (1 year)

## Education

**Yeshiva University**
PsyD, Psychology · (2004 - 2009)

**New York University**
MSW, Social Work · (1998 - 2001)

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 14 of 60



University of Southern California

BA, Psychology · (1988 - 1992)

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 15 of 60

# Tab B

casey@creativetherapiesnc.com | 919.880.4078

Creative Therapies, PLLC
6103 Kayton Street
Raleigh, NC 27616

December 5, 2021

Cyrus Mehta
cm@cyrusmehta.com

Re: Beckie Moriello

Dear Mr. Mehta,

I conducted a psychological assessment with Beckie Moriello on December 3, 2021. This evaluation was given to determine if their Autism Spectrum Disorder symptoms were at play during an incident that occured in June of 2017. Please let me know if you have any questions or need further information about this case.

Sincerely,

Casey Baine, LCMHC, LCAS, NCC

Casey Baine, LCMHC, LCAS, NCC
Licensed Clinical Mental Health Counselor
Licensed Clinical Addictions Specialist
Nationally Certified Counselor



casey@creativetherapiesnc.com | 919.880.4078

**Presenting Problem:**

Rebecca "Beckie" Moriello is a 42 year old non-binary Caucasion who presented for a psychological assessment on December 3, 2021. The assessment was requested in order to evaluate whether or not their Mild / High-Functioning Autism Spectrum Disorder could have contributed towards them misinterpreting what they were allowed to do during an incident in a courtroom in June of 2017.

While observing court one day in June 2017, Mx. Moriello was silently using their phone to respond to messages from their office regarding their clients. The security guard told them to stop, but Mx. Moriello informed the security guard of the published court policy that said that attorneys were permitted to use their electronic devices for business purposes. The security guard, however, continued telling Mx. Moriello to stop using their phone. Finally the security guard said, "The judge told me to tell you to turn it off." Mx. Moriello expressed that they knew this judge very well and that the judge was frequently hostile to attorneys, defendants, witnesses, and observers. This judge regularly yelled at Mx. Moriello in the middle of hearings, so it did not occur to them that the judge would pass a message to them through a security guard, rather than directly addressing Mx. Moriello. Therefore, Mx. Moriello continued disregarding the security guard's instructions, as they believed these instructions contradicted published court policy. In addition, Mx. Moriello was doing what they and other attorneys have done on multiple previous occasions which was using their electronic devices in the courtroom for business purposes.

The incident resulted in Mx. Moriello receiving two misdemeanor charges that resulted in two convictions. Due to Mx. Moriello's conduct and these convictions, they stand to potentially have their law license suspended for 30 days. The suspension would have multiple negative impacts on their practice as an attorney and could have potentially been avoided if they did not have symptoms of Autism Spectrum Disorder

**Mental Status Exam:**

Mx. Moriello presented in casual dress, normal grooming and hygiene. They were open and engaged throughout the assessment, were calm and cooperative, and did not have any unusual movements or psychomotor changes. Mx. Moriello had normal affect and a congruent euthymic mood. Their thought content did not include any suicidal ideations, homicidal ideations or delusional thinking. Short and long term memory appeared to be within normal limits. They were oriented to time, place and person and appeared to have good insight and judgment based on the clinical interview.



**Current Symptoms**:

Mx. Moriello's symptoms are consistent with a diagnosis of a high functioning/mild form of Autism Spectrum Disorder. The initial diagnosis was deemed as provisional based on a Neurocognitive Evaluation given by Dr. Lisa Fox in March of 2021.

The following symptoms that support their diagnosis coincide with the criteria listed in the Diagnostic and Statistical Manual of Mental Disorders IV:

- Mx. Moriello presents with persistent impairment in reciprocal social communication and social interactions even when formal language skills are intact. They indicated a history of decreased social-emotional functioning since childhood and reported losing friends through communications that others have interpreted as "rude". They shared that they feel as if they are "on another planet" when communicating with other people and are hurt when they do not understand what was wrong during the interaction.

- Mx. Moriello appears to have overly literal language and insistence on adhering to very fixed rules. These behaviors are evidenced by being excessively truthful on their bar application regarding legal transgressions they were told to disclose. In addition to their interpretation of rules in the courtroom during the incident mentioned previously in June of 2017. To name a few examples of this symptom would be such admissions on their bar application. These include: stealing a ring in a toy bin when they were little, not fully reading the box of information before clicking "I accept these terms and conditions", jaywalking, speeding a little and sometimes not coming to a complete stop. Despite these admissions, the North Carolina Bar admitted them ultimately.

- Mx. Moriello shows current and past symptoms that have persisted since early childhood development that have resulted in limited social capacities. They reported never having many friends and being bullied as a child. They currently report that they have few friends as an adult and the friends that they do have mainly include professionals in their career field.

- Mx. Moriello provided multiple examples of difficulties in communication with co-workers and other colleagues, all stemming from not recognizing implied rules, taking things literally, and being direct. These amount to clinically significant impairments of occupational functioning. In my opinion, the two misdemeanor convictions are further evidence of this impairment. Utilizing accomodations set forth in the Americans with Disabilities Act would likely aid in these impairments and would help with avoiding any type of legal and/or occupational consequences in the future.



casey@creativetherapiesnc.com | 919.880.4078

- To rule out other possible diagnoses and to confirm the Autism Spectrum diagnosis, Mx. Moriello's disturbances are not better explained by intellectual disabilities or global developmental delays.

**Relationships:**

Mx. Moriello has a partner that they have been with for the last four years. They have lived together for most of that time. Mx. Moriello reports lacking social supports as an issue since childhood. They shared that most of their current friends consist of colleagues.

**Education:**

Mx. Moriello's highest level of education is a Juris Doctorate Degree obtained from the University of North Carolina at Chapel Hill.

**Work History:**

Mx. Moriello practiced as a criminal defense lawyer from 2010 - 2011 and has been practicing as an immigration lawyer since then.

**Chemical Use:**

Mx. Moriello reports past experimentation with substances but reports not ever having any regularity of use. They report no current chemical use of any kind.

**Legal History:**

Until the two misdemeanor charges that Mx. Moriello received from the incident in June of 2017, they had no prior legal history aside from a few minor traffic tickets.

**Conclusion:**

There is every indication that Mx. Moriello was solely trying to follow the rules in the courtroom that day in June 2017. The above listed Autism Spectrum symptoms that appear to have contributed towards their actions resulting in two misdemeanor charges in June of 2017 include: deficits in reciprocal social communication and interactions, use of overly literal language and an insistence on adhering to very fixed rules, persistence of limitations in social capacities through adulthood, and occupational limitations.



The misdemeanor charges could have likely been avoided if accommodations were made available that are set forth in the Americans with Disabilities Act.  Such ADA accommodations would have addressed Mx. Moriello's not understanding what they were supposed to do in light of written instructions saying one thing and verbal instructions saying the opposite. This contradiction was particularly confusing to Mx. Moriello given the "official" nature of the written instructions in contrast to verbal instructions coming from a security guard, when Mx. Moriello was aware of immigration court security guards giving improper orders in the past such as telling them to remove their underwire bras.

Mx. Moriello is clearly dedicated to their craft and takes pride in learning how to excel at it.  Ironically, observing court that day was part of Mx. Moriello trying to improve their skills as an attorney.  Mx. Moriello believes, based on informal observation and conversations, that they've observed more hearings than any or almost any of their local colleagues.  Mx. Moriello generally attends about twice the number of required CLEs, for the same reason.  During the evaluation, they kept going back to how they had been taught at a CLE that when a judge tells an attorney to do something, you do it, regardless of whether it is in line with the law or even under the judge's authority to request.  Mx. Moriello said that their training was clear that you comply in the moment, then take it up on appeal or with the court liaison if you disagree.  Mx. Moriello was therefore clear that if the judge had told them directly to turn off their phone, they would have done so.  However, it was never mentioned in a CLE that attorneys must or should comply with rogue security guards, and in fact Mx. Moriello had heard examples from colleagues of security guards making unlawful demands from attorneys.  Attorneys would sometimes refuse these demands, and were lauded for doing so.  Therefore, Mx. Moriello was under the impression that attorneys are within their rights to not comply with demands from security guards that are contrary to published court policy.

Consequences from the two misdemeanor charges such as a suspension of Mx. Moriello's license would have further negative impacts on their practice as an attorney.  The charges could have possibly been avoided if they did not exhibit symptoms of Autism Spectrum Disorder and if accomodations were made available to them as set forth under the Amerians with Disabilities Act, such as providing clear expectations concerning behavior and conduct. Considerations for Mx. Moriello's diagnosis as it relates to their occupational limitations and lack of accommodations would be helpful in reducing any further negative impacts the incident in June of 2017 has on their ability to practice law now and in the future.

In hindsight, Mx. Moriello expresses remorse and will never engage in this conduct again.  They will comply with the direction from either an immigration judge or court security officer.  They have paid heavily by being convicted of misdemeanors, receiving a public censure by the North Carolina Bar and facing a 30 day suspension, which if imposed, will have a devastating adverse impact on a committed and hardworking lawyer like Mx. Moriello.

Casey Baine, MA, LCAS, LCMHC, NCC
6103 Kayton St
Raleigh, NC 27616
919.880.4078 | casey@creativetherapiesnc.com

**My Qualifications**:

I received my Master's Degree in Clinical Mental Health Counseling from Montreat College in August of 2017. My Bachelor's Degree in Psychology was completed at North Carolina State University in 2004. I also received my Associate's Degree in Arts and a Certificate in Substance Abuse Counseling from Wake Technical Community College in 2002 and 2013, respectively. I am licensed as a Licensed Clinical Addictions Specialist (LCAS) #23911 with the North Carolina Substance Abuse Professional Practice Board (NBSAPPB). I am also a Licensed Clinical Mental Health Counselor Associate (LCMHC) #13442 by the North Carolina Board of Licensed Professional Counselors (NCBLCMHC) and a Nationally Certified Counselor (NCC) #958047 by the National Board of Certified Counselors. My professional practice in providing therapeutic services began in July of 2012. I am a member of the Licensed Professional Counselor Association of North Carolina (LPCANC).

**Education**:

**1990-1994** Graduated North West Rankin High School. Brandon, Mississippi. Overall 3.54 GPA.

**1996-2002** Graduated Wake Technical Community College. Associate in Arts Degree Obtained. Raleigh, North Carolina. Overall 3.5 GPA. Dean's List.

**2002-2004** Graduated North Carolina State University. Bachelor of Arts Degree in Psychology Obtained. Raleigh, NC. Overall 3.6 GPA. Magna Cum Laude.

**2012-2013** Certificate in Substance Abuse Counseling Received. Wake Technical Community College. Raleigh, NC. 4.0 GPA.

**2014-2017** Graduated from Montreat College with a Master's in Clinical Mental Health Counseling. Durham, NC Overall 3.96 GPA.

**Work Experience**:

**2019-Present** Clinical Director and Therapist at Creative Therapies, PLLC, Raleigh, North Carolina. Conducts assessments, group and individual therapy. Runs all procedural and managerial aspects. Specialities in children, adolescents and their parents.

**2018-2019** Individual Therapist, The Mindly Group, PLLC, Raleigh, North Carolina. Conducted intake assessments, individual and group therapy and clinical coordination of care.

**Feb 2018 - July 2018** Assessment and Referral Specialist, Strategic Behavioral Health, Garner, North Carolina. Duties included assessment of patients upon entry of the hospital, coordination of care with the nursing staff and proper documentation. Also ran groups therapy to fill in for other therapists as needed.

**2017 – 2018** OPT Team Lead/Therapist, B&D Integrated Health, Durham, North Carolina. Conducted outpatient therapy in the community using best practice standards along with management of care interventions for individuals with clinical needs who needed a higher level of care than what traditional outpatient therapy services offer. Conducted supervision for OPT case manager via weekly face to face supervision sessions. Populations served included children through older adults suffering from mental health and substance use disorders.

**May 2017 - December 2017** Therapist, First Step Services, Raleigh, North Carolina. I conducted assessments, individual therapy, facilitated ADETS and facilitated short term and longer term (IOP) group therapy. Populations served include Federal Probation clients, Criminal Justice Population, as well as adolescents and older adults with substance use and other mental health disorders.

**December 2016 – May 2017** Clinical Mental Health Counseling Intern, New Leaf Behavioral Health, Raleigh, North Carolina. I conducted individual and group counseling sessions, conducted assessments, developed treatment plans, coordinated services for clients, and wrote case notes for groups and individual clients. Populations served included children through older adults with a myriad of mental health and substance use disorders.

**October 2016-December 2016** Practicum Student Counselor, Sigma Health Services, Raleigh, North Carolina. I worked at Sigma for my practicum experience and observed and conducted Substance Abuse Intensive Outpatient groups. I observed assessments, observed individual sessions, led individual sessions and completed group and individual case notes.

**2012-2016** Therapist, Joe Hazel Counseling Services, Raleigh, North Carolina. I contracted counseling services with Joe Hazel Counseling Services and provided individual and group counseling for clients dealing with substance use and other mental health disorders. I also facilitated ADETS and Prime for Life groups. Additionally, I also conducted assessments, developed treatment plans, wrote progress notes, and maintained client files.

**2012-2015** Therapist, Paradigm Counseling, Holly Springs, North Carolina. Provided individual and group counseling for clients dealing with substance use and other mental health disorders. I wrote a syllabus for each of my groups, wrote progress notes for each client and maintained client files.

**April 2016 – October 2016** Therapist, SouthLight Healthcare, Inc., Raleigh, North Carolina. I contracted with Southlight to facilitate judiciary groups for adolescents and adults who were in the criminal justice population dealing with substance use and mental health disorders.

**2008 - 2009** Children's Service Worker, Free Will Baptist Children's Home, Middlesex, North Carolina. Provided direct care to children and adolescents in permanent group housing as well as emergency housing. Transported children to and from field trips and events in the community. Conducted weekly individual interviews with children and wrote reports about their status and wellbeing.

**2007 - 2013** Owner/Piano Instructor, Make a Joyful Noise, Zebulon, NC. Taught private piano lessons out of my home for over 6 years. Handled all scheduling, accounting, teaching and hosted many recitals.

# Tab C

TRENDING: **Legislation to Protect Dreamers is Vital** by *Paúl Pirela*



f  y  [O]  in  ᴺ  ▶  SEARCH  �𝒫



*think* 🗽 immigration

TOPICS ⌄     AILA.ORG     FEATURED ISSUES     QUICKTAKES     FAQ

# 1-2% OF PEOPLE ARE AUTISTIC – HOW THAT AFFECTS YOUR PRACTICE

Posted by Beckie Moriello | Apr 14, 2021



In college, I had an on-campus job doing clerical work in the admissions office. One day, one of the staff read to us in shock an email exchange that she'd just had with a prospective student. The student had emailed a question, and the college representative responded to his email with relevant information, but without actually answering his question. The student then responded with, "I repeat, ….." and repeated his initial question.

## TAKE ACTION



AILA's Advocacy Action Center allows you to advocate for legislative and policy reforms consistent with AILA's principles and priorities.

Well, the staff person was so floored at the student's apparent rudeness that she just had to share it with everyone within earshot. I responded to her that I could see where he was coming from since she in fact hadn't answered his question. She brushed off my response and repeated that he was clearly being over-the-top rude, and that his file was being marked so that he wouldn't be admitted to this college.

I felt so bad for this kid. I knew that he didn't think he'd done anything wrong, and in fact he must have thought that the staff person who'd responded to his email was the one who'd been the poor communicator.

Fast forward a couple of decades, and many people who know me aren't surprised that I recently joined the growing number of people diagnosed with autism late in life.

It's currently estimated that 1-2% of people are autistic. You've surely met many of us over the years, including some people who you never suspected were autistic. We're all different. The spectrum isn't a line going from mild symptoms to stronger symptoms. Rather, the spectrum is a constellation of symptoms, each of which can present in different ways in different autistic people. They say that if you've met one autistic person, you've met one autistic person.

So what does this have to do with us as immigration attorneys? Well statistically we likely have autistic clients, might have

autistic staff, and definitely have autistic colleagues. We're already aware that our clients may have cultural differences that impact how they interact with us, and we try to be understanding of those differences. So here's another difference to be aware of and understanding of.

I'd also encourage you to not necessarily rule out prospective staff who may come across in an interview as "odd." Some people who communicate very well within their professional roles don't always interview well. Interviews are generally a terrible way to assess potential job performance in an autistic person since many interview questions are vague, open-ended, and frankly irrelevant to the job. And those of us who don't make eye contact like neurotypicals or have other more divergent communication styles might still be excellent in a back-office role.

Another thing to keep in mind is that many autistics have strong sensory aversions, and are majorly affected by certain lights, sounds, smells, or touches. So if anyone in your life complains about these things, please take them seriously and don't brush off their complaint, which is what often happens. For autistics, these things can be painful and truly impact our quality of life.

Autism Awareness Month is now known as Autism Acceptance Month. I'm not saying it's easy to be accepting. I once gave up trying to communicate with an autistic roommate despite giving what I thought were herculean efforts, and an autistic colleague once gave up trying to

Case 1:22-cv-00969   Document 4-8   Filed 11/10/22   Page 27 of 60

communicate with me. These communication failures are hurtful for the autistic person, as it can feel like our best will never be good enough.

But as Alfred Adler said, "The only normal people are the ones you don't know very well." Our profession involves communicating with people who often have very different backgrounds from ours. We're used to keeping an open mind. Let's keep opening it more and more. We've got this. Some brains work differently. Maybe we shouldn't necessarily reject someone (from college or anything else) because of it.

**SHARE:** 

# Tab D

# Law Office of Susan G. Roy, LLC

*Attorney at Law*

**Susan G. Roy**
Admitted New Jersey and New York
sue@sgrlawoffice.com

**Aya Dwidari Samra**, *Staff Attorney*
Admitted New Jersey
aya@sgrlawoffice.com

163 Cranbury Road, Suite 101
Princeton Junction, NJ 08550

Phone: 609.716.7400
Fax: 609.716.7411

**December 16, 2021**

Honorable Steven Morley
Department of Justice
Executive Office for Immigration Review
Philadelphia Immigration Court
Robert Nix Federal Bldg and Courthouse
900 Market Street, Suite 504
Philadelphia, PA 19107

Dear Judge Morley,

I write this letter on behalf of Ms. Rebecca Moriello, an immigration attorney whom I know in a professional capacity. Ms. Moriello is a zealous and dedicated attorney specializing in removal defense. Much, but not all, of her practice is focused on helping detained non-citizens. She is a North Carolina Board Certified Immigration Law Specialist, is a member of the American Immigration Lawyers Association (AILA) and has been practicing immigration law for approximately 12 years.

As you know, I too am currently in private practice, and focus on many of the same types of cases as Ms. Moriello. She is always more than willing to share her knowledge, brainstorm on legal and policy issues, and is both a passionate and compassionate advocate and colleague. I consider her to be a valuable asset to the immigration bar, as well as to her clients.

Of course you also know that prior to being in private practice, I was an Immigration Judge at the Newark Immigration Court and am currently a member of the Round Table of Former Immigration Judges. I was also both an Assistant Chief Counsel and a Senior Attorney for OPLA-Newark, and an Attorney Advisor at the Board of Immigration Appeals. I am a past Chair of the NJSBA Immigration Law Section, am the current Chair for AILA-NJ, and am also a member of the AILA National EOIR/ICE Committee. I mention this because I believe my background demonstrates my knowledge of not only immigration court procedures, but also the extent to which I am involved with immigration attorneys across the country, not just in New Jersey and Pennsylvania.

Because I have a strong professional relationship with Ms. Moriello, I have been aware of the situation that is the subject of this disciplinary proceeding since it first occurred. And I understand both sides of the issue. I strongly believe in showing respect, if not deference, to the officers assigned to protect the immigration courts, and of course to judges themselves. Having said that, it has been my experience that attorneys are generally allowed to use their cell phones in court, even if they are not the attorney of record in a particular case. This holds true for both government and private attorneys. So I also understand how an exception to this general policy could have caused confusion and ultimately led to the events that transpired.

Ms. Moriello's actions have been deemed to amount to minor criminal offenses; those convictions have been upheld by the Court of Appeals for the Fourth Circuit. As a result, she has been fined and publicly censured by the North Carolina Bar. For someone in Ms. Moriello's position, a solo practitioner who often represents clients with little financial means, these punishments are not insignificant. And, in my opinion, they are appropriate.

It is my understanding that EOIR and DHS disciplinary counsel have issued a Notice of Intent to Discipline seeking to suspend Beckie for 30 days for engaging in conduct prejudicial to the administration of justice or that undermines the integrity of the adjudicative process, in violation of 8 C.F.R. § 1003.102(n), after having first sought to permanently disbar her for her actions.

Over the past 20+ years that I have been involved with litigation of cases before EOIR, I have witnessed many, many attorneys (and others) using their cell phones in court. Occasionally, I have seen a security guard, clerk, or judge advise the attorney to stop using their phone. I have seen some attorneys refuse and being escorted out of the courtroom as a result. I have also witnessed perhaps overzealous attorneys engage in conduct at or near a federal building that resulted in misdemeanor criminal convictions. To the best of my knowledge, none of these attorneys were permanently disbarred for such relatively minimal conduct. The fact that EOIR and DHS even considered such an action is cause for concern, in my opinion.

Moreover, I do not believe that Ms. Moriello's actions even warrant a 30-day sanction pursuant to 8 C.F.R. § 1003.102(n). Ms. Moriello's actions were not ideal, and the Judge found that her texting on her phone in the back of the courtroom was distracting to the proceedings. But I do not believe that her actions, even taken in the worst possible light, amount to "conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process, [or] seriously impair[ed] or interfere[d] with the adjudicative process." *Id.* If that were the case, quite frankly, individuals appearing before the Newark Immigration Court, at least pre-COVID, would have been sanctioned nearly every single day.

Even assuming that her conduct does rise to the level of conduct described in 8 C.F.R. § 1003.102(n), I respectfully suggest that a 30-day sanction is disproportionate punishment here. Ms. Moriello has already incurred financial penalty for her actions, and has been publicly censured by the North Carolina

Bar, a fact that will remain on her record forever. Causing her additional financial hardship, especially during such tenuous economic times, by imposing a 30-day moratorium on her ability to practice before EOIR is an unduly harsh and unnecessary penalty.

In addition, such a penalty is not only detrimental to Ms. Moriello, but is even more harmful to her clients, particularly those whose cases will be scheduled during that 30-day period. They will be forced to seek other counsel, proceed without counsel, or seek continuances of their matters, which, as you are aware, is not as easy as it once was, and further can cause a real hardship to any detained clients she might have whose cases would be affected.

For all of the above reasons, I respectfully request that the appropriate sanction would be public censure. This is the sanction that the North Carolina Bar thought was most appropriate given the circumstances, and I believe that EOIR should follow suit, and impose upon Ms. Moriello the penalty of public censure.

Thanks you for considering my opinion, and please feel free to contact me should you need any additional information.

Sincerely,

Susan G. Roy, Esq.

# SUSAN GIRARDO ROY
**Law Office of Susan G. Roy, LLC**
**163 Cranbury Road, Suite 101, Princeton Junction, NJ 08550**
**(609)-716-7400    sue@sgrlawoffice.com**

## LEGAL AND LITIGATION EXPERIENCE:

**Law Office of Susan G. Roy, LLC,** Princeton Junction, NJ          January 2016-present
Owner attorney of boutique immigration and municipal court law firm, specializing in complex family-based and criminal immigration cases, including residency, citizenship, waivers, asylum, visas, and litigation.

**Browne, Diallo & Roy, LLP,** Princeton Junction, NJ          January 2014-December 2015
Partner in boutique community-based law firm. Areas of practice: immigration, municipal court, landlord tenant, expungement, juvenile adjudications, and general litigation.

**Round Table of Former Immigration Judges**          May 2018-present
Review, prepare, and edit amicus briefs before the US Supreme Court, the federal appeals courts, and the Board of Immigration Appeals; prepare and edit comments on proposed federal regulations; provide guidance to Congress, the Attorney General, EOIR, pro bono organizations, and immigration attorneys on a variety of immigration issues.

**U.S. Department of Justice, Newark Immigration Court**
*Immigration Judge*          March 2008-April 2010
Presided over immigration court cases, focusing on criminal, asylum, national security, persecutor and other high-profile cases; issued oral and written rulings of law and findings of fact; served as liaison judge between headquarters, advocacy groups, and DHS staff; participated in Continuing Legal Education training panels.

**U.S. Department of Homeland Security, Immigration and Customs Enforcement**
**Office of the Chief Counsel, Newark, NJ**
*Senior Attorney/National Security Attorney/Assistant Chief Counsel*          January 2000-March 2008
Managed the Detained Criminal Alien Project; served as the point of contact for other ICE divisions and outside law enforcement agencies; litigated national security and other complex immigration cases before the Immigration Court; the Board of Immigration Appeals and the U.S. Court of Appeals; assisted the U.S. Attorney's Office in federal cases.

**U.S. Department of Justice Attorney General Honors Program**
**Board of Immigration Appeals, Falls Church, VA**
*Attorney Advisor*          September 1996-December 1999
Reviewed records of proceedings in complex immigration appeals cases; researched pertinent law, including criminal, constitutional, jurisdictional, and statutory construction issues; wrote draft appellate decisions for Board Members. Authored several published decisions and en banc decisions; wrote numerous separate opinions for various Board Members. Selected by Board Member to draft separate opinions in criminal immigration cases.

**USDOJ/D.C. Corporation Counsel Pro Bono Program, Washington, DC**
*Special Assistant Corporation Counsel*          November 1997-June 1999
Represented the Corporation Counsel in child abuse and neglect proceedings, handled all stages of litigation, including papering, initial and status hearings, motions preparation, trials, and disposition hearings.

**Office of the United States Attorney, Sex Offense Branch, Washington, DC**
*Law Clerk*          June 1994-December 1994
Researched and wrote motions and memoranda on criminal and evidentiary issues; assisted with case planning and trial preparation; interviewed victims and witnesses; attended trial and sentencing proceedings.

**Rains and Pogrebin, P.C., Mineola, NY**
*Summer Associate*                                          May 1995-August 1995
Wrote appellate brief in religious discrimination case; researched and prepared memoranda on federal and state labor and employment issues; assisted with arbitrations, depositions, and negotiations for public and private sector clients.

## TEACHING AND WRITING EXPERIENCE:

**Immigrants' Rights/International Human Rights Clinic**          April 2021-present
Seton Hall University School of Law
Center For Social Justice, Newark, NJ
**Independent Contractor**
Author legal briefs and petitions for review on behalf of indigent clients before the BIA and the federal courts of appeals.

**Physicians for Human Rights, New York, NY**          September 2021-present
Delphi Exercise: Expert Consensus on Asylum Evaluations
**Expert Panelist/Contributor**
Assist in development of model medical and psychological forensic asylum evaluations.

**Rutgers Law School, Newark, NJ,** Immigration Law Seminar          Fall 2021
**Guest Lecturer**
Prepared two virtual asynchronous classes via Zoom on bars to asylum and naturalization 101.

**Rutgers Law School, Camden, NJ,** Crimmigration Seminar          Fall 2020
**Guest Lecturer**
Reviewed and edited students' legal briefs on Crimmigration issue prior to two classes; virtually supervised and critiqued students' oral arguments.

**Seton Hall Law School, Newark, NJ,** Immigration Law Seminar/Clinic          Spring 2020
**Guest Lecturer**
Discussed virtually the practical aspects of being an immigration attorney, an Immigration Judge, and an Assistant Chief Counsel to the immigration survey class and clinic students.

**Rutgers Law School, Newark, NJ,** Immigration Law Seminar          Spring 2020
**Guest Lecturer**
Prepared and taught virtual class on best practices for representing clients in Webex/VTC hearings before the immigration courts.

**Rutgers Law School, Camden, NJ,** Crimmigration Seminar          Fall 2018
**Guest Lecturer**
Reviewed and edited students' legal briefs on Crimmigration issue prior to three classes; supervised and critiqued students' oral arguments both in-person and virtually.

**Rutgers Law School, Newark, NJ,** Immigration Law Seminar          October 2, 2012
**Guest Speaker**
Discussed admissibility and asylum issues for those accused of terrorism

**Mercer County Community College**, West Windsor, NJ          Spring 2013-Spring 2016
*Adjunct Professor, Language Arts Department*
Taught Basic Skills and Freshman level writing and Language Arts courses to diverse student body.

**WWP News and U.S. 1 Newspapers,** West Windsor, NJ
*Municipal News Editor/Contributing Writer/Staff Reporter*          November 2012-June 2015
Wrote news section of WWP News, including municipal and school district news and feature articles; in-depth
Interviewing and reporting on people and events of interest; assisted with copy-editing and content.

## PROFESSIONAL AWARDS and RECOGNITIONS:

Chambers and Partners, Ranked Immigration Attorney, Band 3, 2021
*American Immigration Lawyer Association* Advocacy Award of the Year, 2019
*Federal Bar Association, NJ Chapter*, 1st Annual Hector Rossi Conference Pro Bono Volunteer Award, February 2016
*NJ State Governor's Jefferson Award*: CFNJ Community Pillar, July 2013
*U.S. Department of Homeland Security, Immigration and Customs Enforcement*, Outstanding Performance Award,
        2002-2008
*Federal Bureau of Investigation, NJ Branch*, Special Recognition Award for Helping to Thwart Terroristic Activity,
        April 2008
*U.S. Department of Justice*: Special Achievement Awards for Sustained Superior Performance, 1998, 1999;
        Outstanding Performance Rating Awards, 1998, 2000, 2001; Employee Volunteer Service Award, 1998
Expert Network Distinguished Lawyer, 2017
Lawyers of Distinction, Nationwide Top 10% Immigration Attorney, 2017
Better Business Bureau Accreditation, 2016

| | |
|---|---|
| **EDUCATION:** | **Georgetown University Law Center, Washington, DC** |
| | Juris Doctor, cum laude, 1996 |
| *Honors:* | Public Interest Law Scholar; Dean's List, 3 years; Honors in Legal Research and Writing |
| *Law Review:* | The Georgetown Immigration Law Journal, Editor in Chief |
| | |
| | **Eagleton Institute of Politics, Rutgers University, New Brunswick, NJ** |
| | Master of Arts, Political Science: Politics and Public Policy, 1990 |
| *Honors:* | Eagleton Institute of Politics and Public Policy Graduate Fellowship |
| | |
| | **Rutgers College, Rutgers University, New Brunswick, NJ** |
| | Bachelor of Arts, with honors, 1989.  Majors: Political Science, English |
| *Honors:* | Phi Beta Kappa Honor Society; Dean's List; Pi Sigma Alpha & Rho Lambda Honor Societies |

*Student Clinic And Research Positions:*
**Georgetown University Criminal Justice Clinic, Washington, DC**
*Student Attorney*          August 1995-May 1996
Represented indigent criminal defendants in misdemeanor and parole proceedings; including conducting client
and witness interviews and investigations, motions preparation, trial advocacy, and sentencing solutions.

**Georgetown University Center for Applied Legal Studies Clinic, Washington, DC**
*Student Attorney*          January 1995-May 1995
Represented indigent clients in disability and consumer protection cases; handled all aspects of case development,
including client counseling, briefs preparation, negotiations, and court appearances.

**Georgetown University Law Center, Washington, DC**
*Research Assistant*          June 1994-December 1994
Researched and analyzed federal and state products liability law for Professor's law review article on
automotive safety, manufacturer liability, and federal preemption issues; edited and cite-checked draft.

**Georgetown University Law Center, Washington, DC**
*Research Assistant*                                     September 1993-June 1994
Conducted research for Professor's law review article discussing the need to improve legislation to preserve federal records; helped plan Public Interest Law Scholars Program events and seminars.

**Center for the American Woman in Politics, New Brunswick, NJ**
*Research Assistant*                                     January 1990-June 1990
Scheduled and conducted interviews with NJ and VA legislators; edited published academic report.

## LEGAL PUBLICATIONS:

*Author:* ***New Jersey Law Journal, Cannabis Issue:*** Walk/Don't Walk: How the Legalization of Marijuana in New Jersey Will Affect Non-Citizens, October 2018.
   ***New Jersey Law Journal, Immigration Issue:*** How the Sins of the Father Can Affect a Child's Claim to Citizenship, February 2017.
   ***Campus Safety and Student Development:*** Immigration Laws Pose Challenges for Both International Students and U.S. Colleges, Vol. 16, No. 2, Winter 2015.
   ***Preface, Tenth Anniversary Special Symposium Edition: Reforming the Administrative Naturalization Process: Reducing Delays While Increasing Fairness***, 10 GEO. IMMIGR. L. J. 1 (1996).
   ***Note, Restoring Hope or Tolerating Abuse: Responses to Domestic Violence Against Immigrant Women***, 9 GEO. IMMIGR. L. J. 263 (1995).
   ***Current Developments in the Executive Branch***, 9 GEO. IMMIGR. L. J. 185 (1995).
   ***Letting the Twins***, PORTFOLIO, Winter, 1991.

*Why N.J. immigrants aren't getting fair day in court before deportation.* **Op/Ed  NJ.com,** March 19, 2018

*Researcher:* Ralph Nader and Joseph A. Page, ***Automobile Design Liability and Compliance with Federal Standards,*** 64 GEO. WASH. L. REV. 415 (1996).
   Philip P. Schrag, ***Working Papers As Federal Records: The Need for New Legislation to Preserve the History of National Policy***, 46 ADMIN. L. REV. 95 (1994).
   Debra L. Dodson and Lauren D. Burnbauer, ***Election 1989: New Jersey and Virginia.***

## SPEAKER/MODERATOR:

### *LAW SCHOOLS:*

**Fordham University Law School, International Refugee Assistance Project** October 26, 2020
**Panelist:** *Asylum Under Attack: A Big-Picture Discussion with Immigration Practitioners*

**Emory University Law School, Behind the Glass:**                 September 29, 2020
**Panelist:** *Immigration Amidst a Pandemic*

### *GOVERNMENT:*

**NJ Supreme Court**
**Invited Speaker:** Rule 1:38 (name change): *Equal Access for the LGBTQ Community*
                                                     June 1, 2021

**NJ Senate Transportation Committee**
**Invited Speaker:** *Expansion of NJ Driver's Licenses*                 December 12, 2019

**NJ State Assembly Judiciary Committee**

**Invited Speaker:** *Expansion of NJ Driver's Licenses*                December 9, 2019

**2017 NJ State Judicial College**
**Panelist:** *Effects of NJ Bail Reform Act on Immigration Bond Proceedings* November 20, 2017

**Presentation to Rep. Bonnie Watson Coleman's Staff**
*Immigration Detention Federal Budget issues*                August 28, 2017

**NJ Assembly Judiciary Committee**
**Invited Speaker:** *Arrest of Undocumented Persons Inside Courthouses*    June 12, 2017

**State of NJ, Office of Public Defender, Division of Mental Health Advocacy**
**Panelist:** *Impact of Immigration Status on Civilly Committed Mentally Incompetent Clients*
April 28, 2017

**NJ Association for the Treatment of Sexual Abusers,**
**Panelist:** *Immigration and Related Legal Issues with Offenders*    February 24, 2017

**Legal Services Of New Jersey Mock Trial Program,**
**Panelist:** *Representing Detained Aliens in Custody and Custody Re-determination Hearings*
April 22, 2009

***AMERICAN BAR ASSOCIATION:***
**Panelist:** Overview and Current Developments of Regulations and Policies Impacting
Family Separation at the US Border                April 12, 2019

***AMERICAN IMMIGRATION LAWYERS' ASSOCIATION (AILA):***

**National Level:**
**AILA Virtual Annual Convention**                June 2021
**Panelist:** *Working with Expert and Supporting Lay Witnesses in Immigration Court*

**AILA Virtual Immigration Court Conference:** A Practical Skills Training    August 20. 2020
Moderator/Panelist: *Immigration Court 101*
Panelist: *Ask an Immigration Judge*

**AILA Annual Convention: Orlando, FL**                June  2019
**Panelist:** *Fearless Lawyering: Ask a Former Immigration Judge*
**Panelist:** *Informal Waivers: Wait, How Do I Apply for That?*

**Podcast:** *Recapture Your Purpose as an Attorney by Defining Your Practice Values,* Podcast #3
AILA Members Susan Roy & Richard Wilner Share Their Personal Philosophies of Practice
July 15, 2020
**AILA Fall CLE Conference:** AILA/Justice Campaign Removal Skills, Park City, Utah
**Lunch Panel:** *Open Forum Of Retired Immigration Judges*        September 13, 2019

**AILA-New Jersey Chapter:**
**Moderator/Panelist:**
*After the Midterms: Matter of A-B-, Pereira, Adjournments & Continuances, Public Charge and More!*
November 29, 2018

**New York Chapter:**
**20th Annual AILA New York Immigration Law Symposium**
**Panelist**: *Lunch Panel with Former Immigration Judges*                    December 17, 2018

**Philadelphia Chapter:**
**Section CLE Panelist:**
*The IJ Application Process and IJ Training: An Update*                    September 23, 2021

**Section CLE Panelist:**
*Updates on Immigration Courts During the Pandemic*                    December 9, 2020

**AILA-Philadelphia 2020 Annual CLE Conference**
**Panelist:** *Hot Topics in Family/Removal Immigration and Practical Tips*     February 28, 2020

**New England Chapter:**
**Section CLE Panelist:** *Former Gov't Officials Tell All- How to be a better AILA attorney!*
                                                            September 26, 2019


**NJ STATE BAR ASSOCIATION (NJSBA) CONTINUING LEGAL EDUCATION COURSES:**

**Annual Meeting, Virtual**                              May 2021
**Panelist:** *Hot Topics in Immigration Law: The Sweeping Law Changes in 2021—What Has Already
Changed and What to Expect*
**Panelist:** *Municipal Court 101, Timely Tips and Topics*

**Annual Meeting, Virtual**                              May  2020
**Panelist:** *Hot Topics in Asylum/Refugee Law*

**Mid-Year Meeting, San Juan, Puerto Rico**             November 2019
**Moderator:** *Puerto Rico Outmigration Post Hurricane Maria*

**Mid-Year Meeting, Rome, Italy**                       November 2018
**Panelist:** *Hot Topics In Criminal Law*

**Annual Meeting, Atlantic City, NJ**                   May 2018
**Panelist:** *Municipal Court Bench Bar Conference*
**Panelist:** *Immigration Across Disciplines—Intersection of Immigration and Criminal/Municipal Court,
Family, and Workers Compensation*

**Annual Meeting, Atlantic City, NJ**                   May 2017
**Panelist:** *What Every Attorney Should Know About Immigration*

**Mid-Year Meeting, Amsterdam, The Netherlands**        October  2016
**Panelist:** *Misdrijf: Hot Topics in Criminal Law in NJ and Netherlands*

**Solo and Small Firm Conference**                      February 24, 2018
Moderator: *How to Survive a Random Compliance Audit*

**17th Annual School Law Conference**                   February 4, 2020
**Panelist:** *The Undocumented Student—Rights and Obligations of Districts, Students,
Parents, and Immigration Authorities*

**Moderator**: *Representing Non-Citizen LGBTQ+ Clients*                    October 28, 2020

**Panelist**: *Immigration Practice Under COVID-19*                    April 30, 2020

**Panelist**: *Advancements in NJ Municipal Court Law Reform*                    January 27, 2020

**Moderator/Panelist:** How to Avoid Common Ethical Pitfalls When Representing
Foreign National Clients                    September 25, 2019

**Panelist**: *Updates in Criminal, Immigration and Municipal Court Law*                    December 12, 2018

**Panelist**: *Crimes, DPs, and Immigration for Municipal Court Practitioners*                    December 13, 2017

**Panelist**: *What Every Attorney Should Know About Municipal Court Convictions for Their Non-Citizen
Clients: Immigration Consequences of Traffic and Criminal Offenses*                    April 3, 2017

**Moderator**: *21ˢᵗ Century and the Unauthorized Practice of Law*                    September 22, 2016

**Panelist**: *Immigration Consequences of Criminal Dispositions and Defense Counsel's
Duty to Advise under Padilla and Nunez-Valdez*                    May 21, 2010

**Panelist**: *How Municipal/Superior Court Criminal Proceedings Impact
Immigration Status*                    November 7,    2009

### *NJ INSTITUTE FOR CONTINUING LEGAL EDUCATION:*

**Advanced Family Law Symposium**                    September 29, 2021
**Panelist**: *Deep Dive on Immigration Waivers*

**Family Law CLE: Can We Talk? What Non-Family Lawyers Want Family Lawyers
to Know To Avoid Disaster in Their Cases**                    September 28, 2021
**Panelist**: *Basic Immigration Issues for Family Law Practitioners*

**Immigration Law CLE: Putting a Fine Point on It: Trial Theory in Immigration**
**Panelist**: *Immigration Trials: Advocating For Your Client*                    September 22, 2021

**Municipal Court Practice Webcast: 2021 Update**                    September 20, 2021
**Panelist**: *Immigration Consequences of Municipal Court Convictions*

**NJICLE Webcast 2021 Immigration Conference**                    April 28, 2021
**Moderator/Panelist**: *EOIR Immigration Court Local Issues*

**Immigration Law Webcast CLE: Updates**                    November 11, 2020
**Moderator/Panelist**: *COVID-19 and the Immigration Courts*

**Immigration Law and LGBTQ Rights Webcast:**                    October 28, 2020
**Panelist**: *Representing Non-Citizen LGBTQ Clients*

**LGBTQ Rights Annual Update**                    June 20, 2020
**Panelist**: *Issues Faced by Non-Citizen LGBTQ Detainees*

**NJICLE Annual Immigration Conference**                            April 22, 2020
Moderator/Panelist: *Policy and Litigation Updates*

**NJICLE Advanced Corporate Immigration Symposium**          November 13, 2019
Panelist: *Scaling The Invisible Wall; Helping To Educate Employers and Workers in the Realities of Immigration Law Today*

**Immigration Law CLE: Asylum Law Updates**                      October 30, 2019
Moderator/Panelist: *2019--Changes to Asylum Law and Policy*

**NJICLE Annual Immigration Conference**                          April 17, 2019
Moderator/Panelist: *BIA/Asylum Office updates*

**Advanced Corporate Immigration Symposium**                   November 14, 2018
Panelist: *NTAs and Immigration Court for the Business Community*

**Immigration Law CLE: Asylum and Refugee Law Update**        September 28, 2018
Moderator/Panelist: *What the A-B- Decision Means for Domestic Violence Applicants*

**Immigration Law CLE: Understanding Asylum and Refugee Law**    January 30, 2018
Panelist: *Nuts and Bolts of Asylum Practice*

**Immigration Law CLE: Understanding Asylum and Refugee Law**    September 13, 2017
Panelist: *Nuts and Bolts of Asylum Practice*

**Immigration Law CLE: When Your Client Faces Deportation: Essential 2017 Post-Election Update**
Moderator/Panelist: *Trial Strategies, Motions to Reopen, Cancellation of Deportation Orders, and Adjustment of Status*                          March 28, 2017

*NEW YORK STATE BAR ASSOCIATION:*

**Virtual Immigration Representation Conference**                May 21, 2021
Panelist: *Practical and Ethical Considerations*

*FEDERAL BAR ASSOCIATION:*

<u>National:</u>

**Virtual Immigration Law Conference**                           May 14, 2021
Panelist: *EOIR Hot Topics*

<u>New Jersey Chapter:</u>

**38th Annual Hon. William H. Strasser Immigration Conference**   May 29, 2019
Panelist: *Newark Immigration Court Update*

**37th Annual Hon. William H. Strasser Immigration Conference**   May 23,   2018
Panelist: *Attorney Ethics Issues*

**36th Annual Hon. William H. Strasser Immigration Conference**     May 24, 2017
**Conference Moderator**
**Panelist:** *Executive Orders and Memos*

**35th Annual Hon. William H. Strasser Immigration Conference**
**Panelist:** *Analyzing Criminal Statutes and Record of Proceedings*     May 25, 2016

**1st Annual Hector Rossy Winter Immigration Conference,**     February 23, 2017
Panelist: *Analyzing a Criminal Statute for Removal Proceedings: The Categorical and Modified Categorical Approach*

**New York Chapter:**

**6th Annual Asylum and Immigration Law Conference, Virtual**     February 6, 2021
**Panelist:** *Best Practices: Investigating and Presenting a Case Remotely*

**New York Asylum and Immigration Law Conference, 2019**     March 8, 2019
**Panelist:** *New Developments in Particular Social Groups*

**Asylum and Immigration Law Conference, 2018**     February 23, 2018
**Panelist:** *What Is Nexus—How to Prove Persecution on Account of a Protected Ground*

**Asylum and Immigration Law Conference, 2017,**     February 10, 2017
**Panelist:** *Deferred Action and DACA Today*

**MERCER COUNTY BAR ASSOCIATION:**

**Xtreme CLE 2021 Virtual**     October 14, 2021
**Panelist:** *Immigration Consequences of New Jersey Criminal Activity: Avoiding Claims of Ineffective Assistance of Counsel*

**Xtreme CLE 2020 Virtual**     October 14, 2020
**Panelist:** *Immigration Consequences of New Jersey Criminal Activity: Avoiding Claims of Ineffective Assistance of Counsel*

**Xtreme CLE 2017**     November 14, 2017
**Panelist:** *Immigration and the Removal Trial of Superman--What Happens in Immigration Court*

**Xtreme CLE 2014**     October 29, 2014
Panelist: *Immigration Law—Crossing the Border, Immigration Law and Criminal Issues*

## OTHER ORGANIZATIONS:

**National Ass'n of Hispanic Real Estate Professionals (NAHREP)**     August 4, 2021
**Panelist:** The Intersection of the Housing Market and Immigration Reform

**Insider NJ-Politically Direct Podcast, Guest Speaker**     April 30, 2020

**Physicians for Human Rights**     March 30, 2020
**Panelist:** *Best Practices for Remote Psychological Asylum Evaluations*

**La Convivencia Social Justice and Interfaith Leadership Conference**    March 11, 2018
**Panelist:** *Immigration Activism: Getting Involved in Your Community*

**LALDEF Facebook Live Presentation:**    September 4. 2019
**Panelist:** *Explaining the expansion of expedited removal*

**Ground Waves Program, Sha'ar Community**    March 1, 2021
**Guest Speaker:** *Rooted Torah/Soaring Musics*


## PROFESSIONAL ORGANIZATIONS:

**New Jersey State Bar Association:**
NJSBA Legislative Committee  2020-2021, 2021- -present
NJSBA Municipal Court Ad Hoc Reopening Committee 2020

*Immigration Law Section:*
    Immediate Past Chair; 2020-2021,
    Chair, 2019-2020,
    Vice-Chair, 2018-2020,
    Treasurer,
    Secretary,
    Nominating Committee Chair, 2021

*Municipal Court Section:*
    Secretary, 2021-2023
    Legislative  Coordinator; 2018-2021
    Cannabis Legislative Analysis Workgroup

**American Immigration Lawyers Association, NJ Chapter:**
    Chapter Chair, 2021-2022
    Chapter Vice-Chair 2020-2021
    Chapter Treasurer, 2019-2020
    Chapter Secretary, 2018-2019
    **Other involvement:** Newark and Elizabeth Immigration Courts Liaison; Pro Bono Committee Member,
    Past Chair; Municipal Court Committee Member; Office of Chief Counsel Committee Member; US
    Citizenship and Immigration Services Committee Member


**American Immigration Layers Association, National:**
    Board of Governors, Member 2021-2022
    EOIR & ICE National Committee, 2021-2022
    AILA National Day of Action: AILA-NJ Chapter Team Leader 2021; Attendee: 2017-2021
    Virtual Conference Organization Committee; August 2020
    Annual Conference Committee: Due Process, June 2019
    AILA Paralegal Online Course Review Committee, 2019

**American Bar Association:** Criminal Justice Section Member, International Law Section Member
**Federal Bar Association, NJ Chapter:** Member
**Mercer County Bar Association:** Member
**International Association of Refugee Law Judges:** Member
**National Association of Immigration Judges:** Member

**Lawyers of Distinction**: Member
**National Association of Professional Women**: Member
**Women Entrepreneurs of Central Jersey**: Founding Member
**Women Owned Law**: Member

## VOLUNTEER POSITIONS:

| | |
|---|---|
| **Legal Services of NJ, ProBonoNJ** Volunteer | 2015-present |
| **Mercer County Bar Association Lawyers Referral Service** Volunteer | 2014-present |
| **Princeton Human Services Commission** Attorney Volunteer | 2017-present |
| **International Refugee Assistance Project (IRAP) Travel Ban** Volunteer | Spring 2017 |
| **Latin American Legal Defense and Education Fund (LALDEF)** | |
|     Board of Trustees | March 2018-present |
|     Attorney Volunteer | 2017--current |
| **Solidaridad,** Attorney Mentor | 2021-present |
| **Haven House** | |
|     Board of Trustees | 2014-present |
|     Vice-Chair, Fundraising | 2020-present |

# Tab E

# *Lory Diana Rosenberg*    *Empowering Successful Immigration Lawyers*

Founder, Attorney, and Coach-Mentor
IDEAS CONSULTATION and COACHING
Immigration Defense & Expert Advocacy Solutions
Senior Attorney and Advisor
IMMIGRANT DEFENDERS LAW GROUP, PLLC

**lory@immigrantdefenders.com**
**801-255-8472 - office line**
**loryrosenberg@gmail.com**
**301-944-4557 - direct line**

December 15, 2021

Re: Beckie Moriello

To whom it may concern:

This is a recommendation and supporting statement in favor of Attorney Beckie Moriello.

My name is Lory D. Rosenberg. I have been in practice as an attorney since my admission in Massachusetts in 1978. I have been a member in good standing of the bars of Massachusetts, the District of Columbia, and the 1st, 3rd, 4th, 5th, 6th, 9th, 10th, 11th, and the D.C. Courts of Appeal for over 30 years. In that capacity, I represented individual clients in various agency proceedings and adversarial hearings, administrative appeals, federal district court actions, and federal petitions for review. From 1997 through 2004, I also was an adjunct professor of law at the American University Washington College of Law. Between August 1995 and October 2002 I was appointed by the United States Attorney General to serve as an appellate Immigration Judge, also known as a Board Member, of the United States Board of Immigration Appeals.

I have known Beckie Moriello professionally as a practicing attorney for nearly ten (10) years. We have engaged in activities through professional law associations of which we are both members. We have worked together frequently on pro bono projects and activities that increase access to legal representation and benefit the client populations that we serve. In addition, Beckie has consulted with me on cases for individual clients who have retained her law office.

1

Beckie is an upstanding, responsible, and knowledgeable attorney and I hold her in the highest regard. She is devoted to her clients and dedicated to upholding an effective and fair immigration hearing process. Her involvement in the representation of immigration clients in removal proceedings is nothing less than admirable and she is highly regarded by her colleagues. Her participation in immigration court removal proceedings has contributed positively to facilitating efficient and just outcomes. Beckie is a strong advocate for her clients, and at the same time, respectful of Immigration Court rules and standards of conduct.

Although she made an error of judgment in continuing to use her phone in the courtroom on the occasion of her arrest, the comments made in social media, which DHS has produced, illustrate that the legal community, like Beckie, perceives the need to access the internet and to be treated equally with the treatment afforded DHS attorneys during hearings. In the single instance that presently is at issue, Beckie was quietly and reasonably engaging inactivity that the IJ and court personnel believed was disruptive. That does not make her perenially disruptive or a person who should be barred from continuing to practice in the removal hearing context. Without re-arguing the merits of the underlying violation with which she was charged, it should be enough to say that subsequent litigation was decided against her and she has paid a penalty for the transgression in question.

Beckie is an experienced and knowledgeable immigration law specialist in North Carolina, whose services provide a benefit to all in the courts in which she practices. Her interest is in representing clients in need of experienced representation, and in helping less experienced attorneys who need support to effectively practice in Immigration Court. These considerations far outweigh the incident on which DHS seeks to rely in prohibiting her from future practice.

I strongly support removing any impediments or bars on Beckie's ability to resume her practice before the Immigration Courts, and urge this reviewing body to deny DHS's request..

Sincerely,

*Lory D. Rosenberg/s*

Lory D. Rosenberg, Esq.

2

# Tab F



December 17, 2021

Immigration Judge Steven Morley
Executive Office of Immigration Review
Robert Nix Federal Bldg and Courthouse
900 Market Street, Suite 504
Philadelphia, PA 19107

RE:     Letter of Support for Rebecca A. Moriello
        Disciplinary Case No. D2021-0007

Dear Honorable Judge,

We write in support of one of our longstanding members, Rebecca (Beckie) Moriello. National Immigration Project of the National Lawyers Guild (NIPNLG) is a national non-profit 501(c)(3) organization headquartered in Washington, D.C. NIPNLG is a membership-based organization representing 1,500 immigration attorneys, legal workers and immigration rights advocates.  NIPNLG specializes in defending the rights of immigrants facing incarceration and deportation. It provides technical assistance and support to community-based immigrant organizations, legal practitioners, and advocates seeking and working to advance the rights of noncitizens. Ms. Moriello has been a dues-paying member of NIPNLG since 2014, and is an active participant in our advocacy community as well as her own community of Durham, North Carolina.

As one of our membership benefits, NIPNLG hosts several active listservs of attorneys and advocates to share information and ask and answer various practice related questions. Since joining our organization, Ms. Moriello has distinguished herself as a resource for other members on complex immigration matters, and demonstrated her willingness to take on challenging removal defense cases in one of the most challenging regions in which to practice. Ms. Moriello's deep knowledge of the removal defense practice in particular is a great boon to our NIPNLG membership, as she often shares her knowledge with less experienced practitioners.

Ms. Moriello works primarily in what are regarded as "hostile jurisdictions," in which asylum grant rates are far lower than average, and the immigration courts are rarely, if ever, held accountable for the patterns and practices that yield such low rates of success, even for persons who come before them with competent counsel. Ms. Moriello practices mainly in the Charlotte Immigration Court, which is where this complaint arose, but also travels to Stewart Detention Center to represent detained immigrants. These courts feature a high denial rate for asylum applicants. Between 2016 and 2021, Judge Pettinato denied 89.2% of all asylum claims that came before him. In the Charlotte Immigration Court as a whole, judges denied asylum 90.2% of the time. Similarly, 90.9% of asylum claims were denied in Lumpkin, Georgia, where Stewart Detention Center is located. In contrast, the national asylum denial rate was 67.6% in the same period. Although Ms. Moriello mostly represents clients in non-asylum matters, these numbers demonstrate how difficult it is to win in those jurisdictions. It is especially significant that Ms. Moriello provides pro bono representation in these courts. In September 2016, a widely cited report on Access to Counsel in Immigration Court found that only 6% of immigrants appearing at Stewart Detention Center were represented, and only 50% at the Charlotte Immigration Court.

In addition to representing her own clients and mentoring other practitioners working in these difficult jurisdictions, Ms. Moriello is a crucial resource to the nonprofit community in North Carolina - including those that are or are seeking to become recognized and accredited by the DOJ to provide immigration legal services to indigent clients under the direction of a licensed immigration attorney. She serves as a technical advisor to three local nonprofits, InStepp, Central Comunitaria, and the Council on Immigrant Relations. She regularly provides training and technical assistance to others, including the NALEO Education Fund and Fayetteville Justice for Our Neighbors. The nonprofit community thrives on her generosity, and would be negatively impacted by a 30-day suspension of her right to practice.

A 30 day suspension would have cascading negative effects on her practice and the larger community that are not intended by this Court. If the suspension is ordered, Ms. Moriello will be required to move for withdrawal from her cases and explain to her clients that she has been suspended from practice for 30 days. She will need to explain how their cases will be covered during that time period, and potentially refund any payment they have rendered for work to be accomplished during that period. She will be forbidden from sharing her expertise in support of these cases and providing technical assistance and training to the nonprofit community. Ms. Moriello may also lose current and prospective clients due to the suspension, as they may be afraid to retain an attorney that has been suspended. A 30 day suspension may paint her as an incompetent lawyer, or one that is not liked by the immigration court. Despite the incident in IJ Pettinato's court, this is not the case, and Ms. Moriello's otherwise impeccable reputation as a knowledgeable and effective immigration

lawyer could lastingly be diminished by this form of discipline. Thus, a 30 day suspension could have a severe impact on Ms. Moriello's practice - and indeed the community, if the effect is to reduce her appearances before the immigration court.

Finally, the penalty proposed by disciplinary counsel at the Executive Office for Immigration Review and the Department of Homeland Security of a 30 day suspension from practice is disproportionate to Ms. Moriello's offense against the court. In light of the criminal court punishment she has already completed, and the public censure issued by the North Carolina Bar, even a short suspension would be overly punitive. In its amended Notice of Intent to Discipline, the government asserts that a 30 day suspension would be in the "public interest." We strongly disagree. No beneficial outcome would be achieved by suspending her from practice. A suspension would instead potentially cause harm to the clients that depend on her and the community that she serves - in her region and beyond.

Ms. Moriello is a valued member of our organization. The suspension would not only harm Ms. Moriello's practice, but also the wider community that relies on the kind of expertise and competency she brings to the practice of immigration law in a region that benefits greatly from her representation. For these reasons, we ask that you not impose a 30-day suspension on Ms. Moriello.

Sincerely,

Sirine Shebaya
Executive Director
National Immigration Project
 of the National Lawyers Guild (NIPNLG)
2201 Wisconsin Avenue, Suite 200
Washington, DC 20007
*sshebaya@nipnlg.org*

# Tab G



**Fayetteville Justice for Our Neighbors**

A United Methodist Immigration Ministry

Fayetteville Justice For Our Neighbors
100 Hay St
Fayetteville NC 28301
(910) 441-3753

December 15th, 2021

To whom it may concern,

As a Board Certified Immigration Specialist and an experienced attorney, Ms. Moriello serves as a mentor for FJFON's staff attorney. Ms. Moriello offers feedback on case-related issues, and shares her professional knowledge and experience in immigration law and practice.

She also served as a speaker at FJFON's Community Law and Health Clinic on November 20th, 2021, where she educated the immigrant community about removal and deportation defense.

She is an outstanding resource to FJFON and the immigrant community at large, and we appreciate her leadership and service. Her support and mentorship is an invaluable contribution to the operations of our nonprofit legal clinic.

Brandy A. McPherson
*Executive Director*

Tab H



*Innovative Strategies for Training,*
*Educational and Prevention Programs*

P.O. Box 52584
Durham, North Carolina 27717-2584

Phone: 919.680.8000
Fax: 866.388.7409
www.instepp.org

16 December 2021

Recognition and Accreditation Program Coordinator
Office of Legal Access Programs
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1900
Falls Church, VA 22041

RE: Technical Immigration Law Support from Beckie Moriello

Dear Recognition and Accreditation Program Coordinator:

I am the CEO/Managing Director of InStepp, Inc., a non-profit company based in Durham, North Carolina, that obtained Department of Justice recognition as a provider of charitable immigration legal services in 2016.   I have also been a DOJ Partially Accredited Representative for InStepp Inc. since October 3, 2016.

As mandated under 8 Code of Federal Regulations Section 1292.2(a), I am writing this letter to confirm that InStepp Inc. has  received pro bono technical immigration law support from Beckie Moriello, a licensed immigration attorney with over ten years of experience in immigration law, since October 2016.

If you have any questions, please do not hesitate to contact me at 919.680.8000.

Sincerely,

Gilda Pettiford Womble

Gilda Pettiford Womble
Immigration Counselor, DOJ Accredited Representative



*Innovative Strategies for Training,*
*Educational and Prevention Programs*

P.O. Box 52584
Durham, North Carolina 27717-2584

Phone: 919.680.8000
Fax: 866.388.7409
www.instepp.org

# Tab I



PRESIDENT
Hon. Pauline Medrano

VICE PRESIDENT
Hon. John Vargas

PRESIDENT EMERITUS
Hon. Edward R. Roybal†

SECRETARY
Hon. Ricardo Lara

TREASURER
Hon. Elizabeth "Liz" Archuleta

BOARD OF DIRECTORS
Hon. Dante Acosta

Hon. Sarah Benatar

Hon. Steve Corona

Hon. Tadeo A. De La Hoya

Hon. Sergio De Leon

Hon. Mario Diaz Balart

Hon. Crisanta Duran

Hon. John Duran

Hon. Antere Flores

Hon. Eric Garcetti

Hon. Leroy Garcia

Hon. Roger Garcia

Hon. Ed Gonzalez

Hon. Nellie Gorbea

Hon. Michelle Lujan Grisham

Hon. Lydia Hernandez

Hon. Lydia N. Martinez

Hon. Eugene Montanez

Hon. Carmelo J. Rios Santiago

Hon. Armando Rodriguez

Hon. Jeffrey Sanchez

Hon. Vicente Sarmiento

Hon. Adrienne Vallejo Foster

Hon. Nora Vargas

Hon. Tony Vazquez

Hon. Peter R. Villegas

EXECUTIVE DIRECTOR
Mr. Arturo Vargas

September 24, 2018

To Whom It May Concern

I am pleased to write this letter of support for Ms. Beckie Moriello.

I currently serve as NALEO Educational Fund's Mid-Atlantic Director of Civic Engagement. NALEO Educational Fund is the nation's leading non-profit, non-partisan, organization that facilitates full Latino participation in the American political process, from citizenship to public service. At NALEO Educational Fund, I promote the organization's civic engagement campaigns in the Mid-Atlantic region and North Carolina. Since 2013, my organization has organized naturalization assistance events in Raleigh and throughout North Carolina. At these events, NALEO Educational Fund aims to assist individuals eligible to become U.S. Citizens in completing their application for naturalization. Ms. Moriello has volunteered with NALEO Educational Fund in more than 10 naturalization events and has led more than 5 trainings on naturalization for volunteer attorneys. Her knowledge of naturalization issues has enabled us to elevate the quality of services we provide at these events. It has also helped us address a critical service gap that exists due to the large population of immigrants and the shortage of immigration legal service providers with naturalization expertise. As an event captain, Ms. Moriello has assisted volunteers and fellow attorneys in need of additional guidance on naturalization issues.

I have personally known Ms. Moriello since 2013. She has an impeccable attention to detail and is passionate about ensuring that her clients are well served. Additionally, it is my honest opinion that Ms. Moriello is a person of high moral character, an excellent advocate for the immigrant community and is well respected by other immigration legal service providers.

Should you have any questions, please do not hesitate to contact me directly at jcabrales@naleo.org.

Juliana S. Cabrales
Mid-Atlantic Director
NALEO Educational Fund
P.O. Box 10613
Raleigh, NC 27609

jcabrales@naleo.org
T: (919) 443-5488

1122 W. Washington Blvd., Third Floor · Los Angeles, CA 90015 | T: 213.747.7606 | F: 213.747.7664 | NALEO.ORG | @NALEO

# Tab J



December 16, 2021

Rafael Lopez
5504 Round Hill Ln
Raleigh, NC 27616

RE:         Letter of Support for Beckie Moriello

To Whom It May Concern:

Dear Sir or Madam:

My name is Rafael Lopez the CEO of Central Comunitaria.org and I am pleased to write this letter on behalf of attorney Beckie Moriello of Raleigh Immigration Law Firm. Attorney Moriello has been a very active supporter in our community helping immigrants with their legal immigration cases. Also for many years she has given me Pro-Bono technical support when I was employed by Catholic Charities of Raleigh as a DOJ Accredited representative.

She was always available to answer questions I had for my clients and we referred clients back and forth in order to better serve the community.

She has also committed to keep on helping us on a Pro Bono basis by signing an agreement with Central Comunitaria. Org to give us technical support once our organization is approved by the Recognition and Accreditation Program Coordinator of the Board of Immigration Appeals

Beckie Moriello is a very trusted and respected member of our community, always ready to help not only her clients, but also organizations who provide services on behalf of the often underserved immigrant population. She goes above and beyond when it comes to serving the community.

If you have any questions, please do not hesitate to contact me at 919-757-3852

Sincerely

Rafael Lopez
CEO

**PROOF OF SERVICE**

On December 17, 2021, I, Cyrus D. Mehta, served a copy of the foregoing <u>Respondent's</u> <u>Evidentiary Exhibits</u> and any attached pages to Paul Rodrigues, Disciplinary Counsel, OGC/EOIR, at 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041 by postal mail and email.

On December 17, 2021, I, Cyrus D. Mehta, also served a copy of the foregoing <u>Respondent's</u> <u>Evidentiary Exhibits</u> and any attached pages to Catherine M. O' Connell, Disciplinary Counsel USCIS/DHS, at 11411 East Jefferson Ave., Detroit, MI 48214 by postal mail and email.

_____
Cyrus D. Mehta