UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-CV-969

| | |
|---|---|
| REBECCA MORIELLO, | ) |
| PLAINTIFF, | ) |
| v. | ) |
| BOARD OF IMMIGRATION APPEALS, | ) |
| MERRICK GARLAND, in his official capacity as United States Attorney General; and | ) |
| UNITED STATES OF AMERICA, | ) |
| DEFENDANTS. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND STAY PENDING REVIEW**

Plaintiff Rebecca Moriello, by her undersigned counsel, respectfully moves this Court for a Temporary Restraining Order (TRO) temporarily restraining Defendants from implementing an October 31, 2022 decision and order (hereinafter "BIA Decision") suspending her from practice before the Immigration Courts, the Board of Immigration Appeals, and DHS for a period of 30 days, effective 15 days from the date of the decision. Plaintiff further moves for a stay of the BIA Decision pending review pursuant to 5 U.S.C. § 705. The BIA Decision is annexed hereto as **Exhibit A** to the accompanying Declaration of Cyrus D. Mehta. The underlying decision of the Adjudicative Official ("AO Decision") who initially suspended the plaintiff, which the BIA affirmed, is annexed hereto as **Exhibit B** to the Declaration of Cyrus D. Mehta.

1

## I. Introduction

Plaintiff Rebecca Moriello, by her undersigned counsel, moves the Court to enter a TRO temporarily restraining Defendants from implementing an October 31, 2022 decision and order (hereinafter "BIA Decision") suspending her from practice before the Immigration Courts, the Board of Immigration Appeals, and Department of Homeland Security for a period of 30 days, effective 15 days from the date of the decision. Plaintiff further moves the Court for a stay of the BIA Decision pursuant to 5 U.S.C. § 705, postponing the effective date of the BIA Decision pending judicial review of that decision under 5 U.S.C. § 706(2)(A) and (E).

These measures are justified in order to prevent irreparable injury to the Plaintiff, who would otherwise be required to serve her 30-day suspension before judicial review of the BIA Decision could be completed. Once the Plaintiff had served her suspension, no relief which the Court could grant would restore those days of practicing immigration law to the Plaintiff. The Court should not allow Plaintiff's meritorious challenge to the BIA Decision to be rendered largely moot in this way.

## II. Factual Basis

On June 29, 2017, Plaintiff was typing on her cell phone while observing a confidential hearing in the Charlotte Immigration Court. **Exhibit B**, AO Decision at 3. Plaintiff refused to stop using her cell phone when asked to do so by a protective security officer. *Id.* A court rule, conveyed by a sign outside the courtroom, allowed attorneys to use their cell phones for business purposes while in court. Plaintiff believed in good faith that she was following this rule as she routinely saw other attorneys use their cell phones

2

Case 1:22-cv-00969 Document 5 Filed 11/10/22 Page 2 of 17

in Immigration Court. *Id.* at 4. Plaintiff's refusal to stop using her phone resulted in the police removing the Plaintiff from court and filing criminal charges against her.

On July 17, 2018, the United States District Court for the Western District of North Carolina found Plaintiff guilty of violating two administrative regulations: failing to comply with the lawful direction of an authorized individual while on property under the authority of the Government Services Administration (GSA), in violation of 41 C.F.R. §§ 102-74.365, 102-74.385, and 102-74.450. Plaintiff was also found guilty of impeding and disrupting the performance of official duties by government employees while on GSA property, in violation of 41 C.F.R. §§ 102-74.365, 102-74.390, and 102-74.450. **Exhibit B**, AO Decision at 3-4.

Plaintiff appealed the convictions to a District Judge of the United States District Court for the Western District of North Carolina and the United States Court of Appeals for the Fourth Circuit, both of which sustained the convictions. Plaintiff also filed a petition for certiorari to the U.S. Supreme Court, which was denied. **Exhibit B**, AO Decision at 4.

On January 14, 2021, the Government issued a Notice of Intent to Discipline ("NOID"), which was accompanied by a Joint Motion for Immediate Suspension, seeking to indefinitely disbar Plaintiff on the ground that her convictions amounted to a serious crime under 8 C.F.R. § 1003.102(h) because a necessary element of the offenses involved interference with the administration of justice. Plaintiff promptly filed an answer, in which she demonstrated that her convictions were not, in fact, for a serious crime.

The Government then moved to withdraw the petition for immediate suspension and issued an amended Notice of Intent to Discipline ("NID") on March 31, 2021, annexed to the accompanying Declaration of Cyrus D. Mehta as **Exhibit C**, stating that "the Government has determined that an immediate suspension and summary proceedings are not appropriate in this matter" and "the allegation that Plaintiff committed a "serious crime", in violation of 8 C.F.R. § 1003.102(h), warranting an immediate suspension and summary discipline, is not the proper charge of misconduct". **Exhibit C** at 2-3. In the amended NID, the Government proposed a 30-day suspension under 8 C.F.R. § 1003.102(n). Over the Plaintiff's opposition, the BIA granted both the Motion to Withdraw the Joint Petition for Immediate Suspension and the Motion to Amend the NID. The BIA order is annexed hereto as **Exhibit D** to the Declaration of Cyrus D. Mehta.

In the meantime, on February 15, 2021, the North Carolina Bar censured Plaintiff under North Carolina Rules of Professional Conduct ("NCRPC") 8.4(d) which provides that it is misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The censure of the North Carolina Bar is annexed hereto as **Exhibit E** to the Declaration of Cyrus D. Mehta.

On October 8, 2021, the BIA ordered that the Plaintiff's case be referred to an adjudicating official ("AO") for factual findings and legal determinations. In the decision dated May 5, 2022, which is annexed as **Exhibit B** to the Declaration of Cyrus D. Mehta, the AO found that Plaintiff's conduct violated 8 C.F.R. §1003.102(n) and upheld the Government's proposed 30-day suspension.

In relevant part, 8 C.F.R. § 1003.102(n) recommends disciplinary sanctions for a practitioner who:

> Engages in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process. Conduct that will generally be subject to sanctions under this ground includes any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct.

On May 27, 2022, Plaintiff appealed the AO Decision to the BIA, arguing that the AO erred in finding that Plaintiff had violated 8 C.F.R. § 1003.102(n) as her conduct did not seriously impair or interfere with the adjudicative process. Plaintiff further argued that the AO committed legal error by concluding that "Conduct resulting in the cessation of a hearing, even if only for a short period of time, is unquestionably conduct which seriously interferes with the adjudicative process." **Exhibit B**, AO Decision at 10. Further, Plaintiff argued that the AO neglected to address authoritative letters furnished by Plaintiff including from a former Immigration Judge and former BIA member, and the AO erred by failing to give sufficient consideration to Plaintiff's autism as a mitigating factor, and by concluding that Respondent "failed to present evidence that she is taking steps to prevent her autism from causing her to engage in misconduct again". The AO thus implied that autism is a disorder that can be cured, and Plaintiff argued that a remand was clearly warranted due to the erroneous observation by the AO on autism. Letters from experts on autism were submitted in support of the remand, which were disregarded by the BIA. Furthermore, the AO erred in suspending Plaintiff for 30 days, and that imposition of a 30-day suspension would actually result in a longer bar. Plaintiff's brief in support of her appeal [aka Respondent's Brief in Support of Appeal] is annexed hereto

5

as **Exhibit F** to the Declaration of Cyrus D. Mehta. The Government's Response Brief is annexed hereto as **Exhibit G** to the Declaration of Cyrus D. Mehta.

### III. Argument

Pursuant to 5 U.S.C. § 705, when review of an administrative decision is sought under the Administrative Procedure Act ("APA"),

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705. Here, the appropriate process is a TRO or emergency stay and then a more durable stay of the suspension, to "postpone the effective date" of the BIA Decision "pending conclusion of the review proceedings." *Id.*

The ordinary standard for issuance of a stay of an agency decision pending review considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Because the text of 5 U.S.C. § 705 focuses on the issue of irreparable harm, we will address that factor first. As we will show, however, Plaintiff prevails not only on that factor but on the other three factors as well.

**A. Plaintiff Will Suffer Immediate and Irreparable Harm Absent a Stay**

As will be demonstrated below, the BIA made numerous erroneous conclusions and failed to afford sufficient weight to Plaintiff's arguments and evidence in the record. If Plaintiff is suspended from practice before Immigration Courts, the Board of Immigration Appeals, and DHS for a period of 30 days, effective 15 days from the date of the decision, she and some of her clients will suffer immediate and irreparable injury.

Fundamentally, the 30-day suspension, if not stayed, will cause irreparable injury because the Court cannot turn back time. Once Plaintiff has served the suspension (or any part of it, though it is unlikely that this litigation would conclude before the entire 30 days were up), that period of time during which she was not able to practice before the Immigration Courts, the BIA, or the Department of Homeland Security cannot be restored to her. No action that the Court could take after the fact would repair the injury to Plaintiff.

Moreover, Plaintiff is solely an immigration attorney and does not practice any other area of law. She operates a very small law firm with only one associate. If Plaintiff is suspended from the practice, she will be unable to perform work for her clients for at least 30 days and forced to step away from her firm for the same period. Plaintiff will have to notify her clients of her suspension and entrust their cases to other attorneys. As the manager of a small firm, Plaintiff is instrumental to the running of her business and it will be very difficult for her to discontinue her involvement for 30 days. Moreover, Plaintiff will lose the revenue that her work would have generated during this period and is likely to lose the trust of some of her clients, who may choose to take their business to

a different law firm when they learn that Plaintiff has been suspended from practice and will be unable to attend to their cases for 30 days. A 30-day suspension may also paint Plaintiff as an incompetent lawyer, or one that is not liked by the immigration court. Plaintiff will also not be able to do pro bono work or to lend her expertise to non-profit organizations. Plaintiff includes a declaration attesting to the irreparable injury a 30-day suspension would cause her while the Court is deciding the merits of her APA claim.

### B. Plaintiff is Likely to Succeed on the Merits of Her APA Claim

*First*, in its Decision, the BIA erred when it affirmed the AO's application of the standard set out in *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996) to Plaintiff's case for purposes of determining whether Plaintiff had violated 8 C.F.R. § 1003.102(n). BIA Decision at 4. The test laid out in *In re Hopkins* requires the Government to demonstrate by clear and convincing evidence that "(1) the lawyer's conduct was improper; (2) the conduct bore directly on the judicial process in an identifiable case; and (3) the conduct tainted the judicial process in more than a de minimis way; it must "potentially impact upon the process to a serious and adverse degree." *In re Hopkins*, 677 A.2d at 61. The court in *Hopkins* made clear that this test is intended "to encompass derelictions of attorney conduct considered reprehensible to the practice of law," *In re Hopkins*, 677 A.2d 55, 59 (DC 1996) (quoting *In re Alexander*, 496 A.2d 244, 255 (D.C.1985)), and is "not so broad as to encompass any and all misconduct by an attorney," *In re Hopkins*, 677 A.2d at 59. The line of cases that apply the *Hopkins* test have similarly involved fraud, dishonesty, or extensive and ongoing misconduct and disruption of judicial proceedings. Because the *Hopkins* test was never intended to apply to brief and minor

8

misconduct like Plaintiff's, it was improper for the BIA to rely on it to find that she violated 8 C.F.R. § 1003.102(n). The BIA relied on the preamble to 8 C.F.R. § 1003.102(n) to insist that the *Hopkins* standard was applicable. *See* 73 Fed. Reg. 44178, 44180-81 (July 30, 2008). However, the actual language of the regulation at 8 C.F.R. § 1003.102(n) should govern rather than commentary around the rule. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-414 (1945) ("Our only tools, therefore, are the plain words of the regulation and any relevant interpretations of the Administrator"); *Samirah v. Holder*, 627 F.3d 652, 659 (7th Cir. 2010) (distinguishing other Federal Register text in a regulatory announcement from the regulation itself). Moreover, a statute should be construed so that, on the whole, no clause, sentence, or word is rendered "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Courts ought to construe statutes so that no provision is "entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988). This canon of statutory interpretation also applies to a regulation such as 8 C.F.R. § 1003.102(n). *See Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (applying this canon of interpretation to a regulation); *U.S. v. CITGO Petroleum Corp.*, 801 F.3d 477, 485 (5th Cir. 2015) (same).

   ***Second***, even if the *Hopkins* test was applicable, Plaintiff did not meet the third prong of the *Hopkins* test. Plaintiff was convicted of two misdemeanors under 41 C.F.R. §102-74.385 and 41 C.F.R. § 102-74.390, which prohibit a variety of inconsequential conduct. Unlike the fraudulent and egregious conduct at issue in *Hopkins*, Plaintiff's refusal to discontinue using her cell phone in the courtroom was based on a good-faith

belief that she was following the directions on a sign. Although the Adjudicating Official asserted that Plaintiff's conduct distracted the IJ and caused him to recess the proceedings, this was a one-time disruption lasting a few minutes that did not rise to the level of conduct seriously impairing or interfering with the adjudicatory process. Plaintiff also submitted extensive evidence to the agency demonstrating that she has been diagnosed with autism, and that her autism likely contributed to the conduct that resulted in her convictions, as she tends to interpret and follow rules in a literal manner.

*Third*, the BIA erroneously concluded that Plaintiff's conduct seriously impaired or interfered with the adjudicative process under 8 C.F.R. § 1003.102(n). The BIA Decision concludes that Plaintiff's conduct seriously impaired or interfered with the adjudicative process based only on evidence that it resulted in "an immigration judge's temporary adjournment of a withholding of removal proceeding solely due to the Plaintiff's conduct". **Exhibit A**, BIA Decision at 4. The mere fact that Plaintiff's conduct resulted in an adjournment lasting a few minutes is not sufficient to establish that it seriously impaired or interfered with the administration of justice. Tellingly, the noncitizen respondent whose hearing she was observing was also not impacted by this brief adjournment and was also not fully aware of the alleged disruption that was happening behind him. **Exhibit B**, AO Decision at 7. A former Immigration Judge wrote a letter stating that she has witnessed many instances of arguments between attorneys and security guards, clerks, or judges regarding cell phone use in court, and does not believe that Plaintiff's conduct even seen in the worst possible light was a violation of 8 C.F.R. 1003.102(n). Letter of Susan Roy, within **Exhibit H of the Declaration of Cyrus D.**

10

**Mehta, Evidentiary Exhibit** (attaching copies of the Evidentiary Exhibits that were submitted as mitigating factors to the AO). "If that were the case, quite frankly, individuals appearing before the Newark Immigration Court, at least pre-COVID, would have been sanctioned every single day." *Id.* This conduct was much less egregious than the fraudulent and dishonest conduct that *Hopkins* and its progeny involved. Plaintiff's refusal to discontinue using her cell phone in the courtroom was also based on a good-faith belief that she was following the directions on a sign. Moreover, her autism, which causes her to follow directives in a literal way, contributed to this behavior, as demonstrated by the experts' letters.

*Fourth*, the BIA Decision asserts that the Adjudicating Official adequately considered Plaintiff's autism as a mitigating factor, but provides no evidentiary support for this conclusion. The BIA Decision asserts that "we are unable to find any specific or indirect statement by the Adjudicating Official that supports the Defendant's claim the AO found autism is curable", despite statements by the AO indicating that Plaintiff's autism diagnosis should not be given weight as a mitigating factor unless she had sought treatment. **Exhibit A**, BIA Decision at 5. The AO Decision stated in relevant part: "…[S]he has not made efforts to prevent similar events from happening in the future, such as evidence of therapy where she could learn tools to help her manage her autistic condition. This Court recognizes that factors beyond Defendant's control may have influenced her improper conduct, but the Court cannot consider them a mitigating factor because Defendant has failed to take any steps that her autism will not cause future misconduct." The BIA failed to consider Plaintiff's argument that the AO erred in

11

characterizing autism as a condition that can be cured, which was supported by letters from experts in the field of autism. The BIA also erroneously concluded that the expert letters were not "material or probative to the outcome of these proceedings" to constitute a basis for remand to the AO. **Exhibit A**, BIA Decision at 5.

*Fifth*, although the BIA acknowledged Plaintiff's assertion that the AO "did not afford appropriate weight to the mitigating factors presented," it nonetheless asserted with no substantive explanation that "the [AO's] assignment of weight to the aggravating and mitigating factors was reasonable, and that he meaningfully considered all of the evidence presented." BIA Decision at 5. As support for this conclusion, the BIA relied on a removal case in which it had held that "[t]he Immigration judge was not required to credit the respondent's wholesale denial of any knowledge or culpability related to the mass executions of Bosnian Muslims captured on the Bratunac-Konjevic Polje road." *Matter of D-R-*, 25 I&N Dec. 445, 455 (BIA 2011); BIA Decision at 5 (citing *Matter of D-R-*). *Matter of D-R-*, which held that an adjudicator "did not commit clear error in crediting" one "version of events" over another, *Matter of D-R-*, 25 I&N Dec. at 455, does not provide cogent support for the BIA's deferential acceptance of the AO's balancing of aggravating and mitigating factors as a matter of discretion, which the BIA ought to have reviewed de novo, *see* 8 C.F.R. § 1003.1(d)(3)(ii).

**Sixth**, the BIA acknowledged that the Plaintiff's social media posts are protected by the First Amendment but then contradictorily upheld the AO's reliance on the posts as an aggravating factor in disciplining the Plaintiff.

12

*Finally*, the BIA erred by failing to consider the censure discipline imposed on Plaintiff by the North Carolina State Bar in assessing the severity of her conduct and determining the appropriate sanction. Though the language of NCRPS 8.4(d) is more expansive than that of 8 C.F.R. § 1003.102(n), as it does not require the conduct at issue to have seriously impeded or interfered with the adjudication process, the North Carolina State Bar gave the Plaintiff a public censure for the same conduct. Plaintiff argued that if she was found to be in violation of 8 C.F.R. § 1003.102(n), she should have been subject to censure in line with what she got from the North Carolina State Bar. The unequal discipline imposed by the North Carolina State Bar and the BIA creates an anomalous situation for Plaintiff who is recognized as an attorney in her state, but is precluded from practicing immigration law. The BIA erred in affirming the AO's decision that it was in the public interest to impose a 30-day suspension assuming that the Plaintiff violated 8 C.F.R. § 1003.102(n).

For all of these reasons, Plaintiff's chance of success on the merits favors the grant of a stay.

### C. Issuance of the Stay Will Not Substantially Injure Other Parties to the Proceeding

The third factor favors the grant of a stay as well. The BIA has only issued, and the Department of Homeland Security and Executive Office for Immigration Review had in the end only requested, a 30-day suspension of Plaintiff, rather than a lengthier or indefinite suspension. **Exhibit A**, BIA Decision, at 6; **Exhibit C**, Amended Joint Notice of Intent to Discipline, at 1. It is therefore clear that the BIA and the other relevant

13

agencies of the United States do not believe that it will cause substantial injury or harm to them to allow Plaintiff to practice immigration law, as she will be able to do after her suspension is complete and she is reinstated to practice. Rather, the purpose of the suspension imposed on Plaintiff is a punitive one: "to remind [Plaintiff] that misconduct before the Immigration Courts has consequences," **Exhibit B**, AO Decision at 15.

If the Court ultimately determines that it is legally appropriate for this sanction to be imposed on Plaintiff based on conduct that occurred in 2017, postponing the effective date of the sanction will not materially lessen its punitive effect. There will therefore be no substantial injury to other parties from the issuance of the requested stay.

### D. The Public Interest Supports a Stay

Just as the limited length of Plaintiff's suspension implies that the BIA and other relevant agencies did not believe they would be injured by her return to the practice of immigration law, it similarly implies that they did not believe Plaintiff's return to the practice of immigration law would cause injury to the public. Plaintiff has not been suspended for an indefinite period on grounds of incompetence or conduct injurious to clients, or suspended pending completion of particular training. She has, rather, been suspended for 30 days as a punitive measure. Postponing the effective date of her 30-day suspension will not harm the public interest. If the Court ultimately determines that the BIA's decision withstands review, Plaintiff will serve the same suspension at a later date.

Granting a stay serves the public interest because it avoids the unseemly spectacle of Plaintiff serving a suspension which the Court later determines to have been legally unjustifiable. If the suspension is, as Plaintiff contends, arbitrary and capricious and not

14

in accordance with law, and not supported by substantial evidence, it is in the public interest that this not be determined only after the suspension has already been served.

Granting a stay also serves the public interest because it enables Plaintiff to continue to serve her clients, without interruption, if the suspension is determined to have been legally unjustifiable. It is again significant in this context that Plaintiff's suspension was not based on any allegation that her representation of any client was incompetent or otherwise harmful to that client. Allowing the suspension to proceed thus punishes not only Plaintiff, but the clients who rely on her services. If the suspension were to be found legally justified, that might be a regrettable necessity, but if the suspension is not upheld on review, a stay will allow this harm to Plaintiff's clients to have been avoided.

For all of these reasons, the public interest factor, like the other three factors, favors the grant of a stay postponing the effective date of the BIA Decision pending the conclusion of these review proceedings.

## IV. Conclusion

For the foregoing reasons, we respectfully request that the Court issue a TRO temporarily restraining Plaintiff's suspension pursuant to the BIA Decision, and a stay postponing the effective date of the BIA Decision pending the conclusion of the judicial review proceedings in this matter.

This the 10th day of November 2022.

        /s/ D.J. O'Brien III
Kearns Davis
kdavis@brookspierce.com
N.C. State Bar No. 22014
D.J. O'Brien III
N.C. State Bar No. 35481
dobrien@brookspierce.com
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
2000 Renaissance Plaza
230 North Elm Street
Greensboro, North Carolina, 27401
Tel. (336) 373-8850
Fax (336) 378-1001

/s/ Cyrus D. Mehta*
Cyrus D. Mehta
Cyrus D. Mehta & Partners PLLC
One Battery Park Plaza, 9th Floor
New York, NY 10004
Tel: (212) 425-0555
Fax: (212) 425-3282
Email: cm@cyrusmehta.com
* *Notice of Special Appearance Forthcoming*

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d), the undersigned certifies this document does not exceed 6,250 words exclusive of the caption, signature block, and certificates as calculated by Microsoft Word.

/s/ D.J. O'Brien III<br>
D.J. O'Brien III