IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REBECCA MORIELLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV969 |
| | ) | |
| BOARD OF IMMIGRATION APPEALS, | ) | |
| MERRICK GARLAND, in his official | ) | |
| capacity as United States Attorney General, | ) | |
| and UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Rebecca Moriello initiated this action against the Board of Immigration Appeals ("BIA" or "Board"), Merrick Garland, in his official capacity as United States Attorney General, and United States of America (collectively, "Defendants") alleging violations of 5 U.S.C. §§ 706(2)(A) and 706(2)(E) of the Administrative Procedure Act ("APA"). (*See* ECF No. 1 at 1, 13.) Before this Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF Nos. 14; 15 at 7.) For the reasons set forth below, Defendants' Motion to Dismiss will be granted.

1

## I. BACKGROUND

On June 29, 2017, Plaintiff, an attorney, and practitioner of the BIA, was using her cell phone while observing a hearing in Charlotte Immigration Court. (ECF No. 1 ¶ 12.) After refusing to cease her use of her cell phone when asked to do so by a protective security officer, Plaintiff was removed from court by officers of the Charlotte Police Department, and criminal charges were subsequently filed against her. (*Id.*) On July 17, 2018, a magistrate judge of the United States District Court for the Western District of North Carolina convicted Plaintiff of violating two administrative regulations: (1) failing to comply with the lawful direction of an authorized individual while on property under the authority of the Government Services Administration ("GSA") and (2) impeding and disrupting the performance of official duties of government employees while on GSA property. (*Id.* ¶ 13.) Plaintiff appealed the convictions to a district judge of the United States District Court for the Western District of North Carolina and, subsequently, to the United States Court of Appeals for the Fourth Circuit. (*Id.* ¶ 14.) Each of those appeals were denied.[1] (*Id.*)

On January 14, 2021, the Disciplinary Counsel for the Department of Homeland Security ("DHS") and the Executive Office for Immigration Review ("EOIR") (collectively, "Government") filed a Joint Notice of Intent to Discipline and a Joint Petition for Immediate Suspension before the BIA, seeking to immediately suspend Plaintiff based on the allegation that Plaintiff's convictions amounted to a "serious crime" under 8 C.F.R. § 1003.102(h). (ECF Nos. 1 ¶ 15; 4-3 at 3.) The Government later filed a Motion to Withdraw the Petition for

---

[1] Plaintiff also filed a petition for a writ of certiorari to the United States Supreme Court, and that petition was also denied. (ECF No. 1 ¶ 14.)

Immediate Suspension and to Amend the Notice of Intent to Discipline on March 31, 2021, determining that an immediate suspension and summary proceedings were not appropriate in the matter because "the allegation that [Plaintiff] committed a 'serious crime' . . . [was] not the proper charge of misconduct."  (ECF Nos. 1 ¶ 16; 4-3 at 3–4.)

Instead, the Government reasoned that Plaintiff's misconduct warranted a 30-day suspension of Plaintiff from practice before the BIA, the Immigration Courts, and DHS under 8 C.F.R. § 1003.102(n) and proposed such a suspension in the amended Notice of Intent to Discipline.  (ECF Nos. 1 ¶ 16; 4-3 at 3–4, 9.)  The BIA granted both the Motion to Withdraw the Petition for Immediate Suspension and the Motion to Amend the Notice of Intent to Discipline.  (ECF Nos. 1 ¶ 16; 4-4 at 5.)  During this same time frame, on February 15, 2021, the North Carolina State Bar censured Plaintiff under Rule 8.4(d) of the North Carolina Rules of Professional Conduct.  (ECF Nos. 1 ¶ 17; 4-5.)

The BIA ordered the referral of Plaintiff's case to an adjudicating official for factual findings and legal determinations.  (ECF No. 1 ¶ 18.)  On May 5, 2022, the adjudicating official found that Plaintiff's conduct violated 8 C.F.R. § 1003.102(n) and upheld the 30-day suspension.  (ECF Nos. 1 ¶ 18; 4-2 at 12, 16.)  Plaintiff appealed the adjudicating official's decision to the BIA, and the BIA affirmed the adjudicating official's decision to uphold the suspension, effective 15 days from October 31, 2022, the date of the decision.  (*See* ECF Nos. 1 ¶ 1; 4-1 at 1, 6.)

Plaintiff commenced this action on November 10, 2022, (ECF No. 1), alleging two claims under the APA, (*id.* at 13).  Plaintiff's first claim alleges a violation of 5 U.S.C. § 706(2)(A) of the APA, contending that the BIA decision was "arbitrary, capricious, an abuse

3

Case 1:22-cv-00969-LCB-JEP   Document 25   Filed 03/29/24   Page 3 of 16

of discretion, and not in accordance with law." (*Id.* ¶ 31.) Her second claim alleges a violation of 5 U.S.C. § 706(2)(E) of the APA, contending that the BIA decision was not supported by substantial evidence. (*Id.* ¶ 33.) Plaintiff seeks to have the Court (1) declare the BIA decision unlawful and set aside the decision, (2) remand the matter to the BIA, (3) grant Plaintiff attorney's fees, and (4) grant other relief at law and in equity as justice may require. (*Id.* at 14.)

On February 15, 2023, Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 14.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

A defendant may present a motion to dismiss for lack of subject matter jurisdiction either by contending that the complaint does not sufficiently allege jurisdiction, or by contending that the allegations in the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Unless a defendant pursues the latter method and attacks the truth of the allegations, a court takes them as true and "in effect, . . . afford[s] the same procedural protection as [the plaintiff] would receive under a Rule 12(b)(6) consideration." *Id.* "In

4

determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court should grant a motion under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## III. DISCUSSION

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish constitutional standing at the motion to dismiss stage, a plaintiff must plausibly allege that she has: "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiff] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Defendants, in their motion to dismiss, argue that the Court lacks subject matter jurisdiction due to the absence of a case or controversy for purposes of Article III of the United States Constitution. (ECF No. 15 at 7.) Defendants assert that the 30-day suspension imposed has ended, making Plaintiff's claims moot. (*Id.* at 8.) Further, Defendants contend that Plaintiff has applied for and been reinstated to practice and that, as a result, there is no

5

relief that could be granted to Plaintiff should she prevail. (*Id.*) Defendants also argue that Plaintiff's "speculative allegations of reputational harm" are insufficient to establish standing. (ECF No. 24 at 1.)

In response, Plaintiff argues that an ongoing case or controversy exists, and that Defendants have failed to meet their burden of establishing that her claims are moot. (ECF No. 21 at 7.) Plaintiff asserts that the professional and reputational damage that the BIA suspension caused did not conclude when the period of the suspension concluded. (*Id.* at 7–8.) Further, Plaintiff argues that she continues to suffer such redressable damage, and that it unjustly deters prospective clients from her, diminishes the goodwill of her law practice, and results in undue economic injury and damages. (*Id.* at 8.)

**A.     Mootness**

The requirement of Article III that limits the jurisdiction of federal courts to cases or controversies, U.S. Const. art. III, § 2, subsists at all stages of a case's litigation, *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). Even if a plaintiff satisfies the requirements of the standing doctrine at the commencement of litigation, a federal court may cease to have jurisdiction when subsequent events cause a claim to become moot. *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (internal quotation marks omitted) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). Mootness has also "been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Off. Eng. v. Arizona*, 520

U.S. 43, 68 n.22 (1997) (citation omitted). However, the Supreme Court has clarified that such a description "is not comprehensive" because exceptions to the mootness doctrine exist that allow claims to remain live, even once events occur after the commencement of litigation that would deprive a plaintiff of standing to bring those claims at the outset of a suit. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The party seeking jurisdictional dismissal has the burden of establishing mootness. *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019).

        1.       <u>The Cases Plaintiff Relies Upon and the Exhibits Plaintiff Has Attached</u>

The Court first acknowledges that Plaintiff has set forth cases in her Response to support her proposition that reputational injury can evade mootness.[2] (*See* ECF No. 21 at 6–11.) Many of these cases cited by Plaintiff only consider the question of the presence of standing and do not involve determining whether or not a claim has been mooted. Nonetheless, "for a controversy to be moot, it must lack at least one of the three required elements of Article III standing." *Townes v. Jarvis*, 577 F.3d 543, 546 (4th Cir. 2009). Therefore, even though the facts of these cases themselves do not involve claims being mooted, these cases' demonstration of the general proposition that reputational injury can satisfy Article III standing equally supports the more specific proposition that reputational injury may prevent a claim from becoming moot.

---

[2] Plaintiff has cited United States Supreme Court cases and cases from other circuits to support this proposition. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951); *Meese v. Keene*, 481 U.S. 465 (1987); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015); *Kendall v. Russell*, Civil No. 2007-126, 2008 WL 219762 (D.V.I. 2008), *aff'd* 572 F.3d 126 (3rd Cir. 2009); *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155 (2d Cir. 2003); *Gill v. U.S. Dep't of Justice*, No. 14-cv-03120-RS, 2015 WL 757278 (N.D. Cal. 2015).

Before determining the actual applicability of the cases cited by Plaintiff to the facts in this case, the Court must first determine whether reputational injury has been alleged by Plaintiff in her Complaint or demonstrated by exhibits that Plaintiff attached to her Response brief. Should the Court discern a claim of reputational injury by Plaintiff through either of these two methods, the Court must then determine whether such a claim for reputational injury would be a cognizable constitutional injury that would satisfy the requirements of Article III standing. Though Plaintiff argues the existence of such a continuing reputational injury in her Response, the Court will not consider the arguments set forth in Plaintiff's Response as allegations when making its determination regarding whether reputational injury has been alleged in the Complaint or demonstrated through exhibits, as a plaintiff "cannot use her brief" in opposition to a motion to dismiss "to amend her complaint." *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008); *see Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017) (unpublished) ("[A] plaintiff may not amend her complaint via briefing.").

Plaintiff does not allege any continuing professional or reputational injury anywhere in her Complaint. (*See generally* ECF No. 1.) However, the Court acknowledges that Plaintiff has attached four exhibits to her Response in opposition to Defendants' Motion to Dismiss: (1) a document detailing the member eligibility requirements for the American Immigration Lawyers Association ("AILA"), (ECF No. 21-1); (2) a document listing the standards for certification as a board-certified specialist in the North Carolina State Bar, (ECF No. 21-2); (3) a copy of an EOIR Notice of Rejected Filing from the Charlotte Immigration Court sent to Plaintiff, (ECF No. 21-3); and (4) a link to a webpage on the EOIR website listing EOIR "Currently Disciplined Practitioners" and that, at the time of the filing of Plaintiff's briefing

on this motion, displayed Plaintiff's continued appearance on the webpage, (ECF No. 21 at 4).

The first two exhibits—the document outlining the member eligibility requirements for the AILA and document listing the standards for certification as a board-certified specialist in the North Carolina State Bar—are insufficient to demonstrate an assertion by Plaintiff of reputational injury. Attaching documents that simply explain criteria for positions in organizations, without more, is not enough to demonstrate such an assertion. Instead of providing documents demonstrating an actual denial of Plaintiff's AILA membership or an actual rejection of Plaintiff's North Carolina State Bar certification, Plaintiff provided documents that do nothing more than list requirements and standards. These two documents, on their face, do not provide information from which the Court could discern an assertion of reputational injury from Plaintiff. For this reason, the Court concludes that, Plaintiff does not assert an injury to reputation that can serve as a basis for the Court's jurisdiction to hear this case through the attachment of these two exhibits.

In contrast, the remaining two exhibits do include information from which the Court can discern an assertion of the existence of reputational injury from Plaintiff. Regarding the copy of the EOIR Notice of Rejected Filing, the Notice is addressed to Plaintiff, (ECF No. 21-3 at 2), and explicitly states that the reason for the rejection of the filing was "DUE TO ATTORNEY BEING DISBARRED," (*id.* at 3). Without drawing the conclusion that it is a legally cognizable injury, the Court agrees that this Notice certainly stands for the contention that Plaintiff had a filing rejected because Plaintiff was "[disbarred]," and the Court concludes that this document is sufficient to assert an injury to her reputation. (*Id.*)

9

Further, the link to the webpage that showed the continued appearance of Plaintiff's name on a list of EOIR "Currently Disciplined Practitioners" demonstrates the association of Plaintiff's name with what would be an unfavorable characterization for any practicing attorney. *See List of Currently Disciplined Practitioners*, EOIR, U.S. Dep't of Justice, https://www.justice.gov/eoir/list-of-currently-disciplined-practitioners, accessed Sept. 18, 2023. As a result, this link is also an exhibit from which Plaintiff's contention of reputational injury can be discerned. Therefore, the Court concludes that the Notice of Rejected Filing and the link to the webpage listing EOIR "Currently Disciplined Practitioners" are exhibits from which the Court could discern a contention of reputational injury to Plaintiff.

The Court next considers whether the reputational injury that has been discerned from each of these two exhibits is a cognizable constitutional injury.

2. Cognizable Injury

When determining whether an asserted injury to reputation satisfies the "injury-in-fact" element of the Article III standing test, the Fourth Circuit requires a "stigma-plus" showing. *See Long v. Pekoske*, 38 F.4th 417, 426 (4th Cir. 2022); *Strickland v. United States*, 32 F.4th 311, 353 (4th Cir. 2022). "To show a cognizable constitutional injury," the Fourth Circuit has held that "a plaintiff must allege more than 'stigma' or harm to 'reputation alone.'" *Long*, 38 F.4th at 426 (quoting *Elhady v. Kable*, 993 F.3d 208, 226 (4th Cir. 2021)). More specifically, a plaintiff must prove (1) "a statement 'stigmatizing his good name' and damaging his standing in the community; (2) some type of dissemination or publication of the statement; and (3) some other government action that "alter[s] or extinguishe[s] one of his legal rights." *Long*, 38 F.4th at 426 (alterations in original) (citation and internal quotation marks omitted) (quoting *Elhady*,

10

993 F.3d at 225). Therefore, the Court must evaluate each of the two exhibits to determine if either demonstrates a reputational injury that satisfies the elements of the "stigma-plus" test and would be considered an "injury-in-fact."

First, though the EOIR Notice of Rejected Filing might be interpreted to stigmatize Plaintiff's good name and damage her standing in the community, the Notice provides no basis to conclude that the rejected filing was made public. (*See generally* ECF No. 21-3.) The Notice does nothing to demonstrate that the rejected filing was publicly disclosed or disseminated by the EOIR or any agent of the government. *See Long*, 38 F.4th at 426 (holding that a plaintiff failed to "allege[ ] facts sufficient to show a stigma-plus injury" because he failed to "allege[ ] the government publicly disclosed his No-Fly status"). As a result, the Court holds that the Notice fails to satisfy the second element of the "stigma-plus" test and cannot serve as the basis of establishing a legally cognizable injury for the purpose of Article III standing.

The Court next addresses the link to the webpage that, at the time of the filing of Plaintiff's briefing on this motion, showed the continued appearance of Plaintiff's name on a list of EOIR "Currently Disciplined Practitioners." *See List of Currently Disciplined Practitioners*, accessed Sept. 18, 2023. The appearance on the webpage of (1) Plaintiff's name on a list of "Currently Disciplined Practitioners," (2) Plaintiff's state, and (3) a link to the BIA decision affirming her suspension certainly places a stigma on Plaintiff's good name and likely damages her standing in the community. (*See id.*) This information was undoubtedly made public and has been disseminated to the public, as the webpage is currently available on the EOIR website and is publicly accessible. (*Id.*)

The final element to be considered is whether the webpage that listed Plaintiff as one of the "Currently Disciplined Practitioners" demonstrates an additional government action that altered or extinguished a legal right of Plaintiff's. A variety of interests exist that are difficult to define, yet "comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 710 (1976). "These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law," and the Supreme Court has consistently held "that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Id.* at 710–11; *see, e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that the State's suspension of issued drivers' licenses involved state action that adjudicated important interests of citizens who were issued licenses and that, as a result, the State could not take away the licenses without the procedural due process required by the Fourteenth Amendment); *Morrissey v. Brewer*, 408 U.S. 471, 482–84 (1972) (ruling that, although the State afforded parolees the right to remain at liberty only as long as the conditions of their parole were not violated, the Fourteenth Amendment's guarantee of due process required certain procedural safeguards before the State could alter the status of a parolee who allegedly violated these conditions).

The Supreme Court applies these standards in the same way when determining deprivation of liberty without due process under the Fifth Amendment. *See Davis,* 424 U.S. at 702 n. 3 ("If . . .defamation by a state official is actionable under the Fourteenth Amendment, it would of course follow that defamation by a federal official should likewise be actionable under the cognate Due Process Clause of the Fifth Amendment."). Thus, if the federal

12

government seeks to remove or significantly alter "a right or status previously recognized" and protected "by [federal] law," the protections of the Due Process Clause of the Fifth Amendment apply. *Id.* at 711. Though there has yet to be a clear recognition by a court with binding authority over this Court regarding whether the right of an attorney to practice law is an interest to which the guarantees of due process apply, the Third Circuit "observe[d] that the Supreme Court has recognized the right of an attorney to practice law." *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987) (citing *In re Griffiths*, 413 U.S. 717 (1973)).

This Court recognizes that courts in other circuits, including the Third Circuit, have applied the law from *Davis* to hold that an attorney's right or status under the law has not been altered, and therefore a property right has not been deprived, where he has not been suspended from practice or has not had his license revoked. *See Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir. 1987) (holding that an attorney's rights had not been removed or significantly altered when, after reviewing the plaintiff's complaint and the record before the court, the plaintiff had not lost the right to practice law, his license to practice law had not been revoked or suspended, and he was still practicing before the I.R.S.); *Valdez v. New Mexico*, 109 F. App'x 257, 261–62 (10th Cir. 2004) (unpublished) (finding that a plaintiff did not allege an actionable substantive due process violation because he did not allege that he lost the right to practice law or that his license to practice law had been maliciously revoked or suspended); *Sturm*, 835 F.2d at 1013 (holding that the restrictive directives imposed upon an attorney's access to a federal correctional institution did not constitute an extinguishment or significant alteration of the right to practice law when the attorney was not precluded from representing inmates at the institution, but was only required to conduct her visits at designated times and upon a

13

notice of twenty-four hours).  However, none of these cases seemed to make a clear finding that confirms that the suspension of an attorney from practice by the government constitutes an alteration or extinguishment of that attorney's legal rights.

Here, Plaintiff did indeed lose her ability to practice law before the BIA, the Immigration Courts, and DHS for 30 days as a result of the BIA decision affirming the suspension.  However, absent clear precedent that such a suspension is an alteration or extinguishment of an attorney's legal rights within the meaning of *Davis*, this Court does not find it reasonable to rely on the cases from other circuits to make a finding that the suspension in this case constitutes an alteration or extinguishment of Plaintiff's legal rights, especially when those cases ultimately held that an attorney's legal rights were not altered or extinguished.  As a result, the Court cannot conclude that the third element of the "stigma-plus" test is satisfied or that Plaintiff has shown a cognizable constitutional injury to satisfy Article III standing.[3]

Accordingly, the Court holds that Plaintiff's claims challenging the BIA decision under the APA are moot.

### B. "Capable of Repetition, Yet Evading Review" Mootness Exception

There is a "well-established mootness exception" for challenged "conduct that is 'capable of repetition, yet evading review.'"  *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011)

---

[3] Moreover, following the Court's recent visit to the webpage on the EOIR website listing EOIR "Currently Disciplined Practitioners," the Court finds that Plaintiff's name and associated information with respect to Plaintiff as a EOIR practitioner no longer appear on the webpage.  *See generally List of Currently Disciplined Practitioners*, EOIR, U.S. Dep't of Justice, https://www.justice.gov/eoir/list-of-currently-disciplined-practitioners, last visited March 27, 2024.  However, this update does not alter the Court's conclusion that the "stigma-plus" test cannot be satisfied and that therefore Plaintiff has not shown a cognizable constitutional injury to satisfy Article III standing.

(quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wisc. Right to Life, Inc.,* 551 U.S. at 462 (internal quotation marks omitted) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17 (1998)).

Plaintiff contends that the "capable of repetition, yet evading review" exception applies because (1) the 30-day suspension was too short in duration to undergo complete judicial review, (ECF No. 21 at 12–13), and (2) there is a reasonable probability that she will be subject to the same action again, given the Defendants' continued adverse position and vigorous defense of its actions, (*id.* at 13–15). Defendants argue that this exception does not apply, as there is no reasonable expectation that Plaintiff will be disciplined again absent new misconduct on her part. (ECF No. 24 at 6). The Court agrees with Defendants.

Here, Plaintiff's challenge of the BIA decision affirming the suspension is now before this Court, and, as has been discussed, the 30-day suspension has already expired. The duration of the suspension was certainly too short for Plaintiff's challenge of the decision to be fully litigated before the suspension expired. However, it is not reasonable to expect Plaintiff to be subject to the same action again. Making such a prediction assumes Plaintiff will commit culpable conduct again in the future, which is an assumption the Fourth Circuit consistently has refused to make. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (holding that a finding that this exception applies would have required the Fourth Circuit to "forecast bad behavior on [a prison inmate's] part" and that the Fourth Circuit "cannot base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow

15

prison rules"); *Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013) (explaining that this exception did not apply to an inmate who brought suit against a warden who suspended his visitation privileges, as the inmate's "argument that his claim is capable of repetition rest[ed] either on mere speculation, or on the possibility that he [would] violate prison rules in the future."). Such a "conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Incumaa*, 507 F.3d at 289).

As was true in *Incumaa*, Plaintiff "holds the keys" to remaining free from further discipline. *Incumaa*, 507 F.3d at 289. The vigor of Defendants' argument in defense of their actions has no bearing on that. The onus of another suspension is on Plaintiff and depends singularly on her future behavior. As such, the Court holds that the "capable of repetition, yet evading review" mootness exception does not apply and concludes that Plaintiff's claims are moot.

Therefore, the Court concludes that it lacks subject matter jurisdiction and grants Defendants' Motion to Dismiss.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 14), is **GRANTED**.

This, the 29th day of March 2024.

/s/Loretta C. Biggs
United States District Judge

16